241 So.2d 905

STATE of Louisiana

v.

Dennis DARDAR, Wiltz Luke, C. Fitch and
Wallace J. Rodrigue.

No. 50337.

Nov. 9, 1970.

———————◆———————

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Wilmore J. Broussard, Jr., Dist. Atty., Jerry H. Schwab, Asst. Dist. Atty., for plaintiff-appellant.

Himel & Whipple, Keith M. Whipple, Houma, for defendants-appellees.

McCALEB, Justice.

Defendants were charged in separate bills of information with trawling in inside waters of the State during the closed season in violation of R.S. 56:495.1. In response to a joint motion for a bill of particulars requesting the exact location of the alleged offense, the State answered that defendants had trawled "In Caillou Bay, Parish of Terrebonne, Louisiana."

Thereafter, defendants filed a motion to quash the bills of information, contending that R.S. 56:495.1 is unconstitutional in that it is vague and ambiguous and hence permits no defense. Specifically, they asserted that the statutory description of the inside waters of the Louisiana coastline, within which trawling is proscribed during the closed season, is inadequate to place them on their guard as to the location of the inside waters either by the recitals of the Act or on a sketch of the Louisiana coastal waters which has been annexed to R.S. 56:495.1 by reference. It is contended that the line drawn on the sketch, which allegedly separates inside waters from outside waters, is wholly arbitrary and without a fixed point, so much so, that no one reading the statute or examining the sketch would be able to ascertain what portion of Caillou Bay is supposed to be within inside waters.

The trial judge maintained the motion to quash, finding the Act unconstitutional in part because of vagueness in the description of the area of Caillou Bay, a part of the waters of which are shown on the sketch attached to the Act as inside waters. The judge declared, in essence, that the recitals of the Act describing the inside waters as supplemented by the sketch is so indefinite as to make it impossible for anyone to locate the portion of Caillou Bay which is comprised within the inside waters.

The State has appealed contending that the ruling of the trial judge is erroneous because, when R.S. 56:495(A) and the annexed sketch are read together, the boundaries of the prohibited area are sufficiently distinct and may be interpreted by reasonably intelligent persons.

R.S. 56:495 as amended by Act 452 of 1962, insofar as pertinent here, defines inside and outside waters as follows:

"A. Solely for the purposes of this Sub-part, the shrimping waters of the State are divided into two classes, inside waters and outside waters. The dividing line between inside and outside waters shall be a line commencing from the mouth of Sabine Pass in an easterly direction following the offshore beaches to South Point on Marsh Isle, thence in a direct line to Eugene I. Lighthouse; *then continuing in an easterly direction*

*along the beaches to the west end of Isles Dernieres and then easterly along the beaches of Isles Dernieres, Wine Isle and Timbalier Island to the mouth of Bayou Lafourche;* * * * *all as according to line indicated on sketch hereinbelow set forth.*

"B. All waters of the state shoreward of the line described in Sub-section A within which the tide regularly rises and falls or into which salt water shrimp migrate are inside waters. All waters seaward of the line described in Sub-section A are outside waters." (Italics ours)

In order that the question for decision may be readily understood, we herewith reproduce a copy of the relevant portion of the sketch annexed to the statute, viz.

An examination of the language of the statute and the sketch annexed thereto makes it evident that the recitals of the Act describing inside and outside waters conflict with the line drawn on the sketch in the Caillou Bay area. In view of this, persons engaged in trawling or shrimping in the waters of Caillou Bay during the closed season have no way of knowing when they are within the inside waters of the bay which allegedly come within the ban of the statute.

At the outset, it is perfectly obvious that the delineation of the dividing line between inside and outside waters, as contained in

the statute, is equivocal. For the Act, after stating the dividing line begins at the mouth of Sabine Pass and runs in an easterly direction following the offshore beach-

es to South Point on Marsh Isle and thence in a direct line to Eugene I. Lighthouse, declares that the dividing line continues "* * * in an easterly direction along

the beaches to the west end of Isles Dernieres and then easterly along the beaches of Isles Dernieres * * *." But this is impossible because the line cannot run in an easterly direction along the beaches to the west end of Isles Dernieres. The direction from the beaches on the mainland to the western end of Isles Dernieres is

south or, as shown by the line on the sketch, attached to the Act, in a southwesterly direction, from the mainland to the west end of Isles Dernieres traversing an undefined portion of Caillou Bay. The State concedes this conflict between the statute as written and the attached sketch. However it professes that the sketch controls since it is made part of the statute and that, when the recitals of the Act and the sketch are read together, the designation of inside and outside waters is clear.

We find it difficult to follow this argument. In the first place, the statute, in defining inside and outside waters, specifically recites throughout the description that the line runs from west to the east and then concludes "all as according to line indicated on sketch hereinbelow set forth." This would lead the reader to believe that there is no divergence between the language of the statute, describing the dividing line and the line as shown on the sketch, which runs southwest from the mainland through a portion of Caillou Bay to the western end of Isles Dernieres. There is no way then to reconcile the recitals of the Act and the line as drawn on the sketch. In such circumstances, the conflict cannot be resolved by giving preference to one provision over the other as we can think of no guide for legal interpretation of criminal laws (and no authority has been cited by the State) which would authorize a holding that, in the absence of a specific provision in the statute so requiring, the sketch is to control any difference between it and the recitals of the Act.

Furthermore, even if it were permissible to conclude that the sketch is to prevail over the contrary recitals of the Act, this would furnish no basis for a holding that the sketch describes the inside waters with the degree of certainty required of a penal statute. Insofar as Caillou Bay is concerned, there are no bearings contained on the sketch which show within any ascertainable degree the point from the mainland from which the dividing line perceptibly runs southwest at right angles through a part of Caillou Bay over to the western tip of Isles Dernieres. Therefore, the sketch alone cannot be deduced to be sufficient to describe the dividing line between the inside and outside waters or, in other words, to mark with clarity the line in Caillou Bay where the trawling is legal and where it is banned. In fine, the statute must be viewed in the light of well-defined principles of law, i. e., it must be construed so as to safeguard the rights of the accused if it is ambiguous and admits of two reasonable but contradictory constructions forasmuch as acts in and of themselves lawful (as here) cannot be held to be criminal

unless there is a clear and unequivocal expression of legislative intent to make them such. Whatever is not plainly within the provisions of a penal statute must be regarded as without its intendment. See 50 Am.Jur., Statutes, Sec. 409, pages 433, 434.

The underlying principle of the rule, that conduct declared to be criminal must be defined with appropriate definiteness, is that all persons are entitled to be informed of the nature and cause of the accusation (Section 10 of Article I of the Louisiana Constitution), that is, all are entitled to be informed by law as to what the state commands or prohibits, and no one should be required to speculate as to the meaning of penal statutes. Thus, fundamental fairness requires that no man be held criminally responsible for that which he could not reasonably understand to be proscribed. 21 Am.Jur.2d, Criminal Law, Section 17, page 98; State v. Truby, 211 La. 178, 29 So.2d 758; State v. Vallery, 212 La. 1095, 34 So.2d 329; State v. Viator, 229 La. 882, 87 So.2d 115; State v. Murtes, 232 La. 486, 94 So.2d 446; State v. Vanicor, 239 La. 357, 118 So.2d 438; State v. Robertson, 241 La. 249, 128 So.2d 646; State v. Bonanno, 245 La. 1117, 163 So.2d 72; and State v. Cloud, 248 La. 125, 176 So.2d 620.

For the reasons assigned, the judgment appealed from is affirmed.