**Terry Antoine DUBOIS et al.**
**v.**
**STATE OF LOUISIANA et al.**
**Civ. A. No. 71–2288.**

United States District Court,
E. D. Louisiana,
New Orleans Division.
March 16, 1972.

Joseph N. Marcal, III, of Marcal & O'Brien, New Orleans, La., for plaintiffs.

John M. McCollam, Gordon, Arata & McCollam, New Orleans, La., for defendant Parish of Terrebonne, State of La.

Peter E. Duffy, Metairie, La., for defendant Louisiana Wild Life & Fisheries Comm.

Before WISDOM, Circuit Judge, and CHRISTENBERRY and R. BLAKE WEST, District Judges.

CHRISTENBERRY, District Judge.

The primary issue before the court in this class action, at its present incipient stage, is whether or not it is one which must be heard by a three-judge federal district court as prescribed by Title 28 U.S.C. §§ 2281 and 2284 (1970). Plaintiffs are shrimp fishermen seeking injunctive relief, declaratory judgment, and private damages on the grounds that certain state statutes which relate to the conservation and control of the shrimp fishing industry in the coastal waters of Louisiana are unconstitutional. This is an anomalous situation, albeit not uncommon, in that the state, the very party for whose benefit the three-judge statute was enacted, is strenuously objecting to the calling of a three-judge court despite plaintiffs' constitutional challenges to state statutes. For the reasons set forth below, we find that while this case is properly within our jurisdiction, abstention is the proper course.

Federal jurisdiction is predicated on Title 42 U.S.C. § 1983, as well as Title 28 U.S.C. §§ 1331 and 1343. It is plaintiffs' contention that Louisiana Revised Statutes 56:493, 56:494, 56:495, 56:-495.1 and 56:497 deprive them of rights guaranteed under the Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments. It is also contended that these state laws are unconstitutional infringements upon the federal plenary power to regulate commerce.

BACKGROUND

At the request of the plaintiffs this three-judge panel was constituted but before proceeding further the parties were ordered by the court to brief the question of whether jurisdiction could be taken by a statutory three-judge court.

The five challenged statutes in this case all purport to regulate the state's shrimping industry. The statutes appear in Title 56 which is entitled, "Wild Life, Fisheries, and Forestry." Within Title 56, the statutes are in Chapter 1 (General Provisions for Wild Life and Fisheries), Part VII (Fish and Other Acquatic Life), and Sub-Part E (Shrimp). Section 493 places control of the shrimping industry in the state's Department of Wild Life and Fisheries, now called the Louisiana Wild Life and Fisheries Commission. The Commission is headed by a Commissioner who is a defendant herein. The remainder of this section deals with the powers, rights, and duties of the Commissioner, his appointed agents, and other state officials in regulating the shrimping industry in Louisiana. The next statute is section 494 which deals with the confiscation and destruction of illegal shrimping tackle. Possession of such tackle creates a prima facie case and, declaring such gear to be a nuisance, the statute authorizes its confiscation and destruction. Section 495 seeks to define inside and outside shrimping waters and section 495.1 specifies what type of trawling is permissible in the two classes of shrimping waters. Finally, section 497 regulates the shrimping seasons and the taking of bait shrimp.

The dates of passage and the judicial history of these statutes are noteworthy. Section 493 was passed in 1946 and has not been the subject of any litigation to the court's knowledge. Section 494 was enacted in 1958 and is very similar to La.R.S. 56:507 which was held by the Louisiana Supreme Court to be a permissible use of the state's police power in State v. Billiot, 254 La. 988, 229 So.2d 72, 75 (1969). Section 497, while

amended on numerous occasions, including the year 1970, has not been dealt with in state or federal court.

Sections 495 and 495.1, however, have been closely scrutinized by the state courts. Both were amended in 1971 as a result of State v. Dardar, 257 La. 191, 241 So.2d 905 (1970), in which the state supreme court ruled that section 495.1 was unconstitutionally vague. The *Dardar* case involved a state prosecution of three shrimp fishermen for trawling in inside waters during the closed season. At the time of *Dardar*, section 495 defined inside and outside waters by means of reference to geographical landmarks and the use of general directions. The state court found that these directions were equivocal and in some respects inaccurate despite the fact that the statute included a sketch of the Louisiana coastline along the Gulf of Mexico with the geographical points clearly marked. Because section 495.1, at the time of *Dardar*, incorporated by reference the definition and sketch of inside and outside shrimping waters and because penal sanctions were provided for its violation, the Louisiana Supreme Court measured section 495.1 by a strict standard of certainty and, accordingly, the statute was voided. In 1971, obviously to correct the constitutional infirmity observed in *Dardar*, the state legislature drastically amended section 495 so that the definition of inside and outside waters is now determined by geographical coordinates in terms of degrees latitude and longitude. The dividing line is further defined by reference to carefully described survey coordinates and topographical landmarks. In addition, section 495 includes a sketch of the Louisiana coastline. Section 495.1 is substantially the same as before, incorporating by implication the amended section 495 definition of inside and outside waters to facilitate trawling regulations.

One other important piece of background information remains. Namely, when the petition was originally filed on August 16, 1971, relief was sought for, *inter alia*, those in plaintiffs' class who had state criminal prosecutions pending against them for alleged violations of these state statutes. Subsequently, on December 13, 1971, plaintiffs amended their petition, as allowed by rule 15(a) of the Federal Rules of Civil Procedure, in order to eliminate the prayer for relief from pending state prosecutions. So far as the court knows, those prosecutions are still pending. Accordingly, the defendants argue that even if this case is proper for a three-judge statutory court it must be governed by the doctrine of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), which states that federal courts will not enjoin pending state prosecutions except under special circumstances, that is where the irreparable injury would be both great and immediate. Defendants, of course, allege that no such special circumstances exist here and that the plaintiffs' amendment to the pleadings is simply a subterfuge by which the mandate of *Younger v. Harris* would hopefully be evaded. Defendants point to *Dardar, supra,* as adequate evidence that these petitioners' rights will be fully protected in state court.

Closely related to the state criminal prosecutions, which are apparently pending, is a civil action filed on June 3, 1971, prior to this suit, by some or all of these petitioners in state court. That suit is styled "Terry Antoine Dubois vs. Louisiana Wild Life and Fisheries Commission, et al.," No. 525–079, and is now pending in the Civil District Court for the Parish of Orleans, State of Louisiana. In that state proceeding petitioners are similarly seeking injunctive relief. In addition, the state law questions and the constitutional claims are approximately the same as those raised in this forum. As set forth below in more detail, this pending civil suit which affords the state court an opportunity to rule first on the legitimacy of these state statutes forms the basis for our decision that this is a case in which federal abstention is proper.

## THREE-JUDGE DISTRICT COURT JURISDICTION

■ Before a three-judge court may abstain, however, it is first necessary to reach the threshold issue of whether the case is proper for such a court. Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794, 796 (1962). While this case presents a close question as to the propriety of our jurisdiction, we hold that this is a case which was properly referred to a three-judge court.

In *Idlewild, supra,* 370 U.S. at 715, 82 S.Ct. at 1296, 8 L.Ed.2d at 796, the Supreme Court expostulated the determinations to be made by the district court when a three-judge court is requested:

> "[T]he court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute."

That a substantial question is presented is apparent from a retrospective view of *Dardar, supra,* wherein the state court found the predecessor of one of these challenged statutes to be unconstitutionally vague. Since *Dardar* was decided two of the statutes have been amended in an effort to overcome the defects pointed out by that case. Thus the constitutional questions raised by plaintiffs about amended section 495.1 and its companion statutes are not facially frivolous. The obvious minimal question which warrants a judicial response is whether or not the amended sections 495 and 495.1 violate due process by either forbidding or requiring "the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application . . . . " Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926). Likewise complainants are in compliance with the requirement that the petition at least on its face allege a basis for equitable relief in as much as an injunction restraining the enforcement of five state statutes is sought.

Because the challenged statutes pertain only to the shrimping industry which by the terms of section 495 is confined to the coastal waters of the state, there is some question as to whether these are state laws of statewide application. After a review of the jurisprudence on this issue, uncertain though it is, this court finds that these laws do have the requisite statewide character. In Rorick v. Board of Commissioners, 307 U.S. 208, 212, 59 S.Ct. 808, 810–811, 83 L.Ed. 1242, 1244 (1939), the Supreme Court held that where a law enacted by the state legislature applied to only a particular municipality or district, despite the fact that it was enforced by state officials, such statute would not come within the ambit of a three-judge court's jurisdiction.

Only recently with respect to the question of statewide applicability the Court further narrowed the scope of a three-judge court's jurisdiction in Board of Regents of the Univ. of Tex. System v. New Left Education Project, 404 U.S. 541, 92 S.Ct. 652, 30 L.Ed.2d 697 (1972). There a state agency, the Board of Regents of the University of Texas System, acting pursuant to state authority had promulgated regulations for all Texas universities within the System. A three-judge court held unconstitutional two of the Board's regulations and on direct appeal, the Supreme Court refused jurisdiction on the ground that "a single judge, not a three-judge court, must hear the case where the statute or regulation is of only local import. Moody v. Flowers, 387 U.S. 97 [87 S.Ct. 1544, 18 L.Ed. 2d 643] (1967); Rorick v. Board of Commissioners, 307 U.S. 208 [59 S.Ct. 808, 83 L.Ed.2d 1242] (1939); Ex Parte Public National Bank, 278 U.S. 101 [49 S.Ct. 43, 73 L.Ed. 202] (1928); Ex Parte Collins, 277 U.S. 565 [48 S.Ct. 585, 72 L.Ed. 990] (1928)." 404 U.S. at 542–543, 92 S.Ct. at 653–654, 30 L.Ed.

2d at 700. Of course, the key is how to determine when a state statute that only applies to part of the state is of more than local import. Prior to *Board of Regents, supra,* it appears that the "grounds for regarding a statute as sufficiently narrow for single-judge treatment [were] solely geographical." Currie, *The Three-Judge District Court in Constitutional Litigation,* 32 Chi.L. Rev. 1, 32 n.179 (1964).

In *Board of Regents* the regulations were found to apply only to three of the state's 23 state-supported four-year colleges or universities. Because 20 of those institutions, as well as the 31 public junior colleges, were not covered by the challenged regulations, the Court concluded that a statewide policy was not involved and thus it was not a case requiring "procedural protection against an improvident state-wide doom by a federal court of a state's legislative policy." Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 800, 805 (1941). The fact that not all members of the relevant class, *i. e.,* state institutions of higher learning, were covered by the system regulations, is perhaps the determinative factor; in fact, only a small percentage were affected. In the present case it is true that the state's shrimping laws are only applicable to ten of the state's 64 parishes and only the part of those parishes which form the coastal area of the state. Nevertheless, all parishes within that class are affected equally and legislation affecting such a significant area, although not large relative to the entire state, cannot, we think, be characterized as of purely local import. This conclusion is buttressed by the observation that the enforcement of laws aimed at the preservation of natural resources and the regulation of a multi-parish industry is more nearly a function of state than of local government. *Cf.* Wilentz v. Sovereign Camp, 306 U.S. 573, 581, 59 S.Ct. 709, 714, 83 L.Ed. 994, 1000 (1939). If the Louisiana access to the Gulf of Mexico was limited to only one average-size parish, then perhaps the rationale of *Rorick, supra,* would apply, but that is a question that need not be answered here.

## ABSTENTION

Satisfied that this is a case for a three-judge court, we have also taken the position, in accordance with defendants' alternative contention, that this is an appropriate situation for federal abstention. In doing so we pretermit the argument raised by defendants that it is improper under Title 28 U.S.C. § 2283 and Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), for a federal court to take jurisdiction of this case because of state criminal prosecutions which were pending against plaintiffs at the time this suit was filed. Jurisdiction, however, will be retained and following an authoritative interpretation of these statutes by the state courts, plaintiffs may resume this litigation if deemed necessary and at that time the applicability of *Younger v. Harris, supra,* can be adequately considered.

This procedure was recently used with success in this District in the case of Arla, Inc. v. Giarrusso, No. 71–1364 (E. D.La., Nov. 22, 1971) (three-judge court). Like *Arla,* the instant case should be governed by the doctrine of Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), which stands for the broad proposition that a federal court should abstain in cases where state action is being challenged in federal court as violative of the federal constitution if there are questions of state law that may be dispositive of the case. See Harman v. Forssenius, 380 U.S. 528, 534–535, 85 S. Ct. 1177, 1181–1182, 14 L.Ed.2d 50, 55 (1965). The *Pullman* doctrine was further developed in Harrison v. N.A.A.C.P., 360 U.S. 167, 177, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152, 1158 (1959), where the Court stated:

"This principle does not, of course, involve the abdication of federal jurisdiction, but only the postponement of its exercise; it serves the policy of

comity inherent in the doctrine of abstention; and it spares the federal courts of unnecessary constitutional adjudication."

In view of the similar civil case brought by these plaintiffs and presently pending in state court, there is no reason to believe that abstention here will cause undue delay or expense. Simply stated there are state law questions here which can best be decided by the state court. This approach should not cause plaintiffs to think that they are being denied a federal forum in which to adjudicate their federal constitutional claims, as such claims can be preserved under the guidelines of England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 421–422, 84 S.Ct. 461, 467–468, 11 L.Ed.2d 440, 448–449 (1964); cf. Hill v. Victoria Drainage District No. 3, 441 F.2d 416, 418 (5th Cir. 1971). First, however, the court believes that in the interest of comity and in the spirit of cooperation which should exist between the two sovereigns, the state court should have the initial opportunity to rule on recently enacted state legislation. There is no reason to believe that the state courts will not conscientiously weigh plaintiffs' arguments. Some of the allegations made by plaintiffs in their broadside attack state that defendants have applied these laws in an arbitrary and discriminatory fashion; that the criminal sanctions of these laws have been invoked without probable cause; that the statutes are vague, overbroad, and give inadequate notice; that the laws are enforced by defendants so as to favor the canning industry; that the administrative procedure of the Wild Life and Fisheries Commission is unlawful under state law; that these statutes comprise an unauthorized extension of the state's police power; and that the statutes authorize state enforcement officers to search and detain persons and seize property without even suspicion. This is a sampling of the plethora of claims advanced in plaintiffs' 16-page complaint.

■ Accordingly, it is our view that this is a case in which abstention from an adjudication of the merits is proper. Deferring at this time to the Louisiana judiciary for a determination of pertinent state law may quite possibly result in the federal constitutional claims being rendered moot or placed in a substantially different posture. County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163, 1166 (1959).

In conclusion, we hold that this is a case properly within the jurisdiction of a statutory three-judge district court under Title 28 U.S.C. §§ 2281 and 2284 (1970). We further hold that federal abstention is appropriate at this time, but pending the outcome of the state court proceeding we retain jurisdiction.

It is so ordered.

WISDOM, Circuit Judge (concurring specially):

I fully agree with Judge Christenberry's thoughtful opinion for the court. Still, an abundance of caution moves me to emphasize the special circumstances in which we abstain today from deciding the plaintiffs' constitutional contentions. The Louisiana statutory scheme under attack has recently been amended. There has been no authoritative state court interpretation of the new provisions. Moreover, at this time a civil action involving questions identical with those raised here is pending in the Civil District Court for the Parish of Orleans. This pending lawsuit provides "a reasonable hope of a prompt state court construction that might substantially recast the federal constitutional question." Arla, Inc. v. Giarusso, No. 71–1364 (E. D.La., Nov. 22, 1971) (three-judge court). In short, our decision should not be read to require or even authorize the postponement of federal jurisdiction in constitutional litigation when no state court construction of the state law under attack is clearly shown to be forthcoming. Today's decision is entirely com-

patible with the general rule that abstention is appropriate only in narrowly limited special circumstances. See Garvin v. Rosenau, 455 F.2d 233 (6th Cir. 1972).