Ernest HOLMAN et al., Plaintiffs,

v.

**BOARD OF EDUCATION OF the CITY OF FLINT, Defendants,**

and

**United Teachers of Flint, Defendant.**

Civ. A. No. 74–40065.

United States District Court,
E. D. Michigan, S. D.

Jan. 29, 1975.

William D. Haynes, Detroit, Mich., for plaintiffs.

C. Rees Dean, Flint, Mich., Erwin B. Ellmann, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

PHILIP PRATT, District Judge.

Plaintiff black teachers and members of the Black Teachers Caucus of Flint bring this constitutional and statutory challenge to the agency shop clause of the master agreement between defendants Board of Education of the City of Flint and United Teachers of Flint. Because of alleged unfair representation on Boards and Committees of defendant Union, plaintiffs have submitted their resignations from membership in the United Teachers of Flint (Paragraph 5(a) of plaintiff's complaint; affidavit of P. Ernest Cole at Paragraph 4), but continue to remain bound by the agency shop clause of the master agreement with the Board of Education, which provides in pertinent part at Article III:

A. All teachers, except teachers born before November 1, 1914, shall as a condition of continued employment, by the Board:

   1. Maintain membership in the UTF, or,

   2. Pay, as an equivalent fee, an amount equal to the membership dues of the UTF (which dues shall include the dues of the Michigan Education Association and the National Education Association.)

E. In the event that a teacher fails to pay the membership dues or equivalent fee, the Board shall cause the termination of the employment of said teacher as of the end of the school year in which said failure occurs. The parties expressly recognize that the failure of any teacher to comply with the provisions of this article shall constitute reasonable and just cause for discharge.

It is plaintiffs' contention in this public employment setting that the above agency shop clause of the master agreement

is violative of Section 1 of the Michigan Tenure of Teachers Act, M.C.L.A. 38.101, which allows discharge of a tenured teacher only for "reasonable and just cause;" and, more importantly, that said provision impermissibly chills the exercise of plaintiffs' first amendment rights of expression and association. Defendant Union has moved to dismiss the complaint on the grounds that this Court lacks jurisdiction and that the complaint fails to state a claim upon which relief can be granted. F.R.Civ.P. 12(b)(1) and (6).

Plaintiffs' complaint is certainly lacking in specificity as to the jurisdictional averments and more care and precision would have been helpful in attempting to understand plaintiffs' position and would have avoided the necessity of reviewing totally inappropriate jurisdictional provisions.

■ Plaintiffs' reliance on the Federal Declaratory Judgment Act, Title 28 U.S.C. §§ 2201, 2202, for example, is misplaced, as that statute does not confer independent grounds of federal jurisdiction. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). In their "Memorandum of Law in Opposition to Motion to Dismiss," plaintiffs do allege jurisdiction under the federal question grant, although no specific reference is made to the appropriate section of the United States Code (Title 28 U.S.C. § 1331).

■ Jurisdiction under the federal question grant requires that plaintiffs' claim arise under the Constitution, laws or treaties of the United States and that the matter in controversy exceed the sum or value of $10,000. Claims based on the right to association and presumably the correlative right not to associate as one chooses have been recognized as falling within the ambit of the First Amendment, NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). In addition, claims to freedom from coerced association have been argued before but have not been reached by a majority of the Supreme Court on

two occasions, International Assoc. of Machinists v. Street, 367 U.S. 740, 81 S. Ct. 1784, 6 L.Ed.2d 1141 (1961) and Lathrop v. Donohue, 367 U.S. 820, 81 S. Ct. 1826, 6 L.Ed.2d 1191 (1961).

■ The allegations of plaintiffs' pleadings certainly fall within the parameters of NAACP v. Alabama, *supra*, and thereby satisfy the requirement of 28 U.S.C. 1331(a) that the case must "(arise) under the Constitution, laws, or treaties of the United States."

■■ It should also be noted that whether a complaint adequately states a cause of action under 12(b)(6) of the Federal Rules of Civil Procedure is a question of law to be determined after, and not before, the Court assumes jurisdiction. Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Further, the fact that the complaint as written might arguably fail to state a cause of action upon which plaintiffs could actually recover does not necessarily divest the Court of jurisdiction. The test, posed in the negative, is that unless

" . . . the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous," *Id.*

the Court should assume jurisdiction. Under that standard, the complaint here is adequate for the "federal question" requirements.

In addition to arising under federal law, a claim under 28 U.S.C. 1331(a) must also involve a matter in controversy in excess of $10,000. With respect to this second requirement the defendant Union contends that its terms have not been met. It suggests that all that is at issue here is the $144.00 annual dues, which it would take more than a lifetime for any one plaintiff to amass to the $10,000 requirement. If in fact the claims of plaintiffs and the class they purport to represent can be viewed as "separate and distinct," then defendant's analysis at least correctly perceives the

thrust of the Supreme Court's decision last term in Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed. 2d 511. The Court in *Zahn* held in a diversity context that the claims of class members which did not individually meet the $10,000 amount in controversy requirement should be dismissed. In dicta, at footnote 11, the Court recognized that the same analysis would apply in federal question cases.

What defendant's analysis in this respect may misperceive is the measure of the amount in controversy in an action in which the primary relief sought is injunctive and declaratory. In such cases, at least one Court of Appeals has held that it is the "value of the right sought to be protected" which is the measure of the amount in controversy. Spock v. David, 469 F.2d 1047, 1052 (3rd Cir. 1972). In that case, the Third Circuit in an interlocutory appeal from the district court's denial of a preliminary injunction, found a sufficient jurisdictional amount for § 1331 purposes in plaintiffs' claimed deprivation of the rights of freedom of speech and assembly to withstand defendants' motion to dismiss. In so deciding, that Court expressly declined to follow the decision of the Sixth Circuit in Goldsmith v. Sutherland, 426 F.2d 1395 (6th Cir. 1970), cert. denied, 400 U.S. 960, 91 S.Ct. 353, 27 L.Ed.2d 270 (1970), insofar as the latter suggested a contrary result.

*Goldsmith*, like *Spock*, involved a challenge to the sufficiency of the amount in controversy requirement of 28 U.S.C. 1331(a) where an injunction to protect alleged First Amendment rights had been sought. The Court in *Goldsmith* did not apply a principle followed by some courts that where basic, constitutional rights are at issue, the $10,000 requirement is ipso facto satisfied at least in the preliminary stages. See e. g. Cortright v. Resor, 325 F.Supp. 797, 810 (E.D.N.Y.1971), rev'd on other grounds

447 F.2d 245 (2nd Cir. 1971). *Goldsmith* involved the right to distribute leaflets on a military reservation. The plaintiff apparently made no studied effort to value his alleged rights in question, [1] nor was there any indication or basis presented to the Court on which it could value the alleged infringement. The Court found no exception to the amount in controversy requirement where a claim was incapable of monetary valuation, albeit it raised an alleged constitutional infringement. The Court therefore affirmed the dismissal of the action by the lower court for want of jurisdiction under 28 U.S.C. 1331.

■ From a close reading of *Goldsmith* it appears clear that Circuit applies the test that, "the amount in controversy is not the amount that the plaintiff might recover at law, but rather the value of the right to be protected or the extent of the injury to be prevented," *supra*, 426 F.2d at 1398. It is at least arguable that the extent of the injury to be prevented in the instant case is the monetary loss to each individual plaintiff which would be occasioned by his or her discharge for failing to contribute to the union an amount equal to the membership dues as per the master agreement. While this type of loss is neither direct nor immediate, it is a necessary element of the potential injury to be prevented. The plaintiffs not only want to be absolved of the requirement to pay dues or their equivalent but also want to be free from the threat or even inevitability of discharge for their continued refusal to pay. It thus appears that the requisite amount in controversy is present.

■■ Even were this Court to hold that the damages alleged are too speculative or too indirect to meet the amount in controversy requirement, this Court finds additional grounds upon which to base jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3). The gravamen

1. The Court noted that: "He (plaintiff) first states that he does not know the precise dollar value of his right to distribute leaflets, but if a dollar value must be as-

sessed, then the right is worth considerably more than the jurisdictional amount of $10,000." Goldsmith v. Sutherland, *supra*, 426 F.2d at 1397.

of the plaintiffs' claim is that Article III of the master contract between the United Teachers of Flint and the Board of Education of the City of Flint infringes upon certain federal constitutional and statutory rights. These assertions would appear to satisfy the initial jurisdictional requirements of § 1983. Accordingly, this Court would have jurisdiction under 28 U.S.C. § 1343(3).[2]

■ Of course Section 1983 also requires that the person who allegedly deprives the plaintiff of his "rights, privileges, or immunities served by the Constitution" must have acted under color of state law. This requirement of state action is amply met by the instant case. Jurisdiction has been premised upon 28 U.S.C. 1343(3) over similar challenges to union and agency shop provisions in the private sector. See e.g. Railway Employes' Dept. v. Hanson 351 U.S. 225, 232, 76 S.Ct. 714, 100 L.Ed. 1112 (1956); Linscott v. Millers Falls Company, 440 F.2d 14, 16 (1st Cir. 1971). In these cases the courts have found that the actions of the parties to the collective bargaining agreement were performed under the aegis of federal statutory law (e.g. Railway Labor Act, 45 U.S.C. § 152; Labor-Management Relations Act, 29 U.S.C. § 164).

Similarly, the instant contractual provision was included in the master contract pursuant to statutory law. M.C.L. A. § 423.210.[3] Additional elements of this case argue forcefully for the existence of state action. In the public employment section one of the parties to the collective bargaining agreement is by definition a "public employer."[4] Further, the very purpose of the Act

was to provide, in statutory form, a means by which to declare and protect the rights and privileges of public employees. Consequently, the conclusion seems inescapable that if allowed to amend their complaint, plaintiffs can properly invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1343(3).

The defendant United Teachers of Flint's Motion to Dismiss is also made pursuant to F.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted, allegedly because the Constitution does not protect plaintiffs' philosophic objections to paying a fair share of the costs of negotiating and administering a collective bargaining agreement under which they continue to derive benefits and advantages. In light of the discussion which follows, this Court need not reach the merits of defendant's contentions at this stage of the proceedings.

■ Although nowhere in plaintiffs' complaint or in any supplemental pleading is a request made for the impanelling of a three-judge court, such a request was made orally by plaintiffs' counsel at the hearing on defendant Union's Motion to Dismiss. 28 U.S.C. § 2281 requires the convention of a three-judge court, in accordance with the procedures outlined at § 2284, whenever an application is made for

"[a]n interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute . . . upon the ground of the unconstitutionality of such statute . . . ."

---

2. Since the essential elements of jurisdiction have been sufficiently pleaded, better practice would indicate that this Court require the plaintiffs to amend their pleadings (28 U.S.C. § 1653) rather than to dismiss this claim. Miller v. Davis, 507 F.2d 308 (6th Cir. 1974).

3. This section provides in pertinent part: "That nothing in this act or in any law of this state shall preclude a public employer

from making an agreement with an exclusive bargaining representative . . . to require as a condition of employment that all employees in the bargaining unit pay to the exclusive bargaining representative a service fee equivalent to the amount of dues uniformly required of members . . . ." M. C.L.A. § 423.210.

4. M.C.L.A. § 423.215.

When an application for a statutory three-judge court is addressed to a District Court, the Court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute. Idlewild Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1961).

Several factors in the present case militate in favor of the conclusion that an application for invocation of a three-judge court is not well-founded. First and foremost is the nature of the injunctive relief sought by plaintiffs—not an injunction restraining enforcement of the section of Michigan's Public Employment Relations Act which authorizes agency shop provisions, but one enjoining the defendants "from collecting and dispersing equivalent fees from plaintiffs and members of the Black Teachers Caucus of Flint, who have resigned from defendant Union because of unfair representation on [its] Boards and Committees . . . " In determining the propriety of the District Court's decision to convene a three-judge court, the Supreme Court has noted:

> "It is necessary to distinguish between a petition for injunction on the ground of the unconstitutionality of a statute as applied, which requires a three-judge court, and a petition which seeks an injunction on the ground of the unconstitutionality of the result obtained by the use of a statute which is not attacked as unconstitutional. The latter petition does not require a three-judge court."

Ex Parte Bransford, 310 U.S. 354, 361, 60 S.Ct. 947, 951, 84 L.Ed. 1249 (1940)

If that fact alone was not sufficient to scuttle plaintiffs' request that a three-judge court be convened, there is the additional hurdle raised by the provisions of the statute that not only the constitutionality of a statute of statewide application be challenged, but also that the injunctive relief sought be directed against the state officer or officers responsible for the enforcement or execution of the challenged statute. Wilentz v. Sovereign Camp, W. O. W., 306 U.S. 573, 580, 59 S.Ct. 709, 83 L.Ed. 994 (1939); Hall v. Garson, 430 F.2d 430, 442 (5th Cir. 1970).

In the present case, relief is sought against the two parties to the collective bargaining agreement which contains the agency shop clause, neither of which is a "state officer" as that term has been technically defined for purposes of Title 28 U.S.C. § 2281. See, Seergy v. Kings County Republican County Committee, 459 F.2d 308, 312–313 (2nd Cir. 1972) (footnote 6) and cases cited therein. Nor might members of the Michigan Employment Relations Commission, the body charged with enforcement of the Public Employment Relations Act be joined as nominal defendants in order that a three-judge court be properly convened. See, Moody v. Flowers, 387 U.S. 97, 101–102, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967). The Board of Education of the City of Flint and/or its members could only be considered "state officers" if it or they were functioning pursuant to statewide policy and performing a state function. Id. Although this matter is not entirely free from doubt, the other infirmities suggested coupled with the general disfavor with which requests for three-judge courts are viewed in this Circuit (See Jones v. Branigin, 433 F.2d 576 (6th Cir. 1970), cert. denied, 401 U.S. 977, 91 S.Ct. 1205, 28 L.Ed.2d 327 (1970)) would indicate that plaintiffs' request for a three-judge court to be convened should be denied.

The decision of the United States Supreme Court in San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) established the general principle that the National Labor Relations Act pre-empts state and federal court jurisdiction to remedy conduct that is arguably protected by the Act. Although the Supreme Court subsequently applied the pre-emption doctrine in the context of a

challenge to a union security clause [5] and although plaintiffs here allege in their complaint the repugnance of the agency shop provision to the Labor Management Relations Act (Taft-Hartley), the express exemption of employees of a state or political subdivision from that Act makes the pre-emption doctrine clearly inapplicable in this case. 29 U. S.C. § 152.

In the present case, plaintiffs' complaint challenges the constitutional validity of the so-called agency shop clause in the context of a public employment setting in the State of Michigan. As originally enacted in 1965, the Public Employment Relations Act (PERA), which gave public employees the right to organize and to certify exclusive bargaining representatives, contained no provision regarding the permissibility, vel non, of requiring as a condition of employment that all employees within the bargaining unit pay to the certified bargaining representative membership dues or an equivalent fee. In 1972, faced with that very question, the Michigan Supreme Court held that an agency shop clause which required that non-members pay a "representation fee equivalent to the dues and assessments of the Association" was violative of Section 10(1) of PERA, reasoning that:

> " . . . any such clause as this which makes no effort to relate the non-members' economic obligations to actual collective bargaining expenses is clearly prohibited by section 10 of the Public Employment Relations Act, as of necessity either encouraging or discouraging membership in a labor organization." Smigel v. Southgate Community School District, 388 Mich. 531, 543, 202 N.W.2d 305, 308 (1972).

As a result of the Supreme Court's decision in Smigel, the Michigan legislature in June of 1973 enacted the following amendment to Section 10 of PERA:

> "That nothing in this act or in any law of this state shall preclude a public employer from making an agreement with an exclusive bargaining representative . . . to require as a condition of employment that all employees in the bargaining unit pay to the exclusive bargaining representative a service fee equivalent to the amount of dues uniformly required of members . . ." M.S.A. § 17.-455(190); M.C.L.A. § 423.210.

Perhaps because the amendment to PERA was enacted to eliminate the perceived conflict between so-called agency shop provisions and Section 10 of PERA rather than to ameliorate any constitutional infirmity, plaintiffs' complaint does not by its literal terms seek to invalidate that amendment. Nonetheless, the Michigan Supreme Court has not had the opportunity since the enactment of the amendment to Section 10 to pass on the constitutionality of agency-shop clauses in the public employment context, although such an opportunity does appear imminent.

In Warczak v. Board of Education, 73 L.R.R.M. 2237 (1970), teachers employed by the Board of Education of the City of Detroit sought a declaratory judgment in Wayne County Circuit Court relative to the validity under statutes and the constitution of the State of Michigan as well as the United States Constitution of the agency shop clause in the collective bargaining agreement between the Detroit Board and the Detroit Federation of Teachers. Pursuant to its decision in Smigel, the Michigan Supreme Court on December 28, 1972, granted the Union's motion for a bypass appeal in Warczak and in the same order, vacated the order of Circuit Judge Kaufman, remanding for further proceedings consonant with its opinion.

On remand, plaintiff teachers in Warczak, along with a similarly situated group in Abood v. Detroit Board of Education, Wayne County Circuit Court No. 155–255 (1970), filed a motion for an order suspending dues deduction authorization cards, which had been signed by the teachers to permit the deduction

5. Motor Coach Employees v. Lockridge, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971).

**800**

of an equivalency fee under the agency shop clause. Prior to the filing of those motions, however, the Michigan legislature had adopted the referenced 1973 amendment to Section 10 of PERA. The Circuit Court granted summary judgments in favor of defendant Boards in both *Warczak* and *Abood*. Appeal from those judgments was taken to the Michigan Court of Appeals, and by order of the Court of Appeals on March 25, 1974, those appeals were consolidated and noticed for hearing in the October, 1974 session. As of this date, no decision from the Court of Appeals has been forthcoming but must be expected in the near future.

As originally fashioned by the United States Supreme Court in 1941 in Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971, the abstention doctrine was grounded upon vague notions of avoiding unnecessary constitutional adjudications and "needless friction" between federal courts and the states. Although the application of the abstention doctrine over the years has not resulted in any retreat from its originally announced theoretical basis,[6] the Supreme Court and the Courts of Appeals have considerably tightened the standards for its application, and thereby reduced the number of situations in which resort to it is appropriate.[7] Recognizing in Zwickler v. Koota, *supra,* the expansion of federal judicial power and responsibility resulting from Congress' grant of federal question jurisdiction in 1875, which placed primary reliance upon the federal courts for vindication of rights guaranteed by the Constitution, laws and treaties of the United States, the Supreme Court reasoned:

"Plainly, escape from that duty is not permissible merely because state courts also have the responsibility, equally with the federal courts,

'. . . to guard, enforce and protect every right granted or secured by the constitution of the United States . . .'" (citations omitted) Zwickler v. Koota, *supra,* 389 U.S. at 248, 88 S.Ct. at 395.

In the most recent Supreme Court case upholding a lower court's application of the abstention doctrine, the Court admitted that although

"'. . . [t]he paradigm case for abstention arises when the challenged state statute is susceptible of a 'construction by the state courts that would avoid or modify the (federal) constitutional question' . . .," (citation omitted).

an equally appropriate case for application of the abstention doctrine exists

"'. . . '[w]here resolution of the federal constitutional question is dependent upon, or may be materially altered by, the determination of an uncertain *issue* of state law . . .'" (citation omitted) Lake Carriers Assn. v. MacMullan, *supra,* 406 U.S. at 510–511, 92 S.Ct. at 1757.

In Gibson v. Berryhill, *supra,* the issue which was central to the lower court's ultimate decision on the merits was then pending before the Alabama Supreme Court. Although the United States Supreme Court did not overturn the District Court's failure to apply the abstention doctrine, it noted that:

"Arguably, the District Court should have awaited the (state court) appeal, a decision which might have obviated the need for an injunction in this case." *supra,* 411 U.S. at 580, 93 S.Ct. at 1699.

Under the circumstances of the present case, therefore, it is appropriate for the District Court to abstain from deciding the issue presented to it under the United States Constitution,[8]

6. See Zwickler v. Koota, 389 U.S. 241, 255, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967) (concurring opinion of Harlan, J.).

7. See Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Lake Carriers Assn. v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972);

Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); see also, Garvin v. Rosenau, 455 F.2d 233 (6th Cir. 1972).

8. Plaintiffs' complaint is premised upon the First and Ninth Amendments and upon the

pending the resolution in the appellate courts of the State of Michigan of a similar challenge, in which reliance is apparently placed upon both Michigan and federal constitutional provisions.[9] Although the language of cases like Wisconsin v. Constantineau, counsels that a federal court should not stay its hand "merely to await an attempt to vindicate the claim in a state court," it is possible that the Michigan courts, for example, could read into PERA's authorization of agency-shop clauses, a requirement that the equivalency contribution payable be only each nonmembers' pro-rata portion of the cost of negotiating and administering the collective bargaining agreement. Cf., Machinists v. Street, 367 U. S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1960). In that case, the test posed in the Supreme Court's most recent pronouncements would be met, since surely the federal constitutional question remaining for the District Court would be materially altered if not avoided.

It is so ordered.

Supremacy Clause. So far as plaintiffs' complaint appears to call in question agency shop clauses as repugnant to various Michigan statutory provisions, it can be dismissed upon the authority of the 1973 amendment to PERA which immunized such clauses from conflict with "any law of this state."

9. For a case expressly adopting that course, see DuBois v. State of Louisiana, 339 F.Supp. 685 (E.D.La.1972) (three-judge court) (Wisdom, J., specially concurring).