Pennsylvania Labor Relations Board *v.* Commonwealth of Pennsylvania, State Liquor Control Board, and Governor Milton Shapp, and Lieutenant Governor Ernest Kline. Retail Clerks Union, Pennsylvania State Store Organizing Committee, Appellant.

Argued December 8, 1976, before President Judge
Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Bernard N. Katz,* with him *Bruce E. Endy,* and
*Meranze, Katz, Spear & Wilderman,* for appellants.

*Forest N. Myers,* Assistant Attorney General, with
him *James F. Wildeman,* Assistant Attorney General,
for appellee, Pennsylvania Labor Relations Board.

*Constance S. McAllister,* Assistant Attorney General, with her *Charles S. Strickler, Jr.,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for State Liquor Control Board, Gov. Shapp and
Lt. Gov. Kline.

OPINION BY JUDGE WILKINSON, January 11, 1977:

The issue presented here is whether the Pennsylvania Labor Relations Board (PLRB) erred in dismissing appellant's charges of unfair labor practices resulting from an alleged refusal to bargain in good faith.[1]  We affirm.

A collective bargaining agreement between appellant and the State Liquor Control Board (LCB) was to expire on June 30, 1975.  Prior to the beginning of negotiations toward a new contract in May 1975, the LCB's negotiators were instructed to offer no greater than a 3.5% wage increase effective July 1, 1975.  This maximum offer was conveyed to appellant's representatives at the first bargaining session but no rationale for this position was given either to the LCB negotiators or the appellant.  Although appellant scaled down its wage demands and even indicated flexibility thereafter, the LCB remained firm on its 3.5% maximum wage increase throughout the negotiations.  Finally, on July 30, 1975, the LCB offered a two-year contract, remaining firm on the 3.5% wage increase effective July 1, 1975, but granting a 2.5% wage increase effective January 1, 1976, and a further 6% wage increase effective July 1, 1976.

Appellant filed its complaint the next day, alleging not only that the LCB had refused to bargain in good faith regarding the 3.5% maximum wage increase, but also that it had "unilaterally established a single economic benefit limitation applicable to all state employees" and sought to superimpose it upon appellant.  The latter allegation presumably referred to a "most favored nations" clause allegedly promised to another, larger public employees' union by

---

[1] In violation of Sections 803 and 1201(a)(1)(3)(5) and (6) of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.803 and 43 P.S. §1101.1201(a)(1)(3)(5) and (6).

which the Commonwealth would grant that union bene-
fits equal to any granted to other unions, including
appellant. Following a hearing before a hearing ex-
aminer, the PLRB dismissed both charges. It held
that the LCB made "various economic and non-eco-
nomic concessions" throughout the negotiations and
therefore no refusal to bargain had occurred. It al-
so held that no credible testimony had been introduced
to show the existence of the alleged "most favored
nations" clause. This appeal followed.

Appellant's claim that the LCB violated its duty
to bargain in good faith by remaining firm as to its
maximum initial wage offer finds no support in the
Public Employe Relations Act. Section 701[2] states:

Collective bargaining is the performance of
the mutual obligation of the public employer
and the representative of the public employes
to meet at reasonable times and confer in good
faith with respect to wages, hours and other
terms and conditions of employment, or the ne-
gotiation of an agreement or any question aris-
ing thereunder and the execution of a written
contract incorporating any agreement reached
but such obligation does not compel either party
to agree to a proposal *or require the making
of a concession.*[3] (Emphasis added.)

Here, the LCB did make various concessions and even
altered its wage proposal. We adopt the language of
the PLRB:

While intransigence as to a 'package' col-
lective bargaining offer may constitute an un-
fair practice refusal to compromise as to one
part of a collective bargaining proposal where

---

[2] 43 P.S. §1101.701.

[3] Because this act pertains expressly to public employers, we
reject appellant's contention that there is some greater duty im-
posed on a public employer beyond that expressed in the statute.

concessions have been made on other aspects of the agreement is not a per se violation of Section 1201(a)(5) of the Act.

Appellant claims that the LCB's concessions as to subsequent wage increases should be disregarded because its position as to the *initial* wage increase (effective July 1, 1975) remained unchanged. This argument ignores the principle that in cases of this type the entire conduct of the parties should be examined.

Appellant's reliance on *National Labor Relations Board v. General Electric Company*, 418 F.2d 736 (2d Cir. 1969), *cert. denied*, 397 U.S. 965 (1970) is misplaced. "As we have previously pointed out, Federal decisions involving the National Labor Management Relations Act are not binding and, in fact, are frequently of little precedent when dealing with the public sector." *Pennsylvania Labor Relations Board v. American Federation of State, County and Municipal Employees*, 22 Pa. Commonwealth Ct. 376, 381, 348 A.2d 921, 924 (1975). Moreover, the majority opinion in *General Electric, supra,* went to great lengths to point out that it was not establishing the principle for which appellant cites the case as authority to us:

In order to avoid any misunderstanding of our holding, some additional discussion is in order. We do not today hold that an employer may not communicate with his employees during negotiations. Nor are we deciding that the 'best offer first' bargaining technique is forbidden. Moreover, we do not require an employer to engage in 'auction bargaining,' or, as the dissent seems to suggest, compel him to make concessions, 'minor' or otherwise.

418 F.2d at 762.

Appellant's final claim concerns the "most favored nations" clause allegedly promised to the larger un-

ion of public employees. Appellant's evidence of this promise is a document which was not part of the record. Hence, it cannot be considered here. *E.g., Local 1400, Chester City Fire Fighters Association v. Nacrelli*, 15 Pa. Commonwealth Ct. 590, 329 A.2d 532 (1974).

Accordingly, we will enter the following

ORDER

Now, January 11, 1977, the Order of the Pennsylvania Labor Relations Board in No. PERA M-7058-C, dated December 11, 1975, is hereby affirmed.

