699 P.2d 1323

**CITY OF PHOENIX, a municipal corporation, Petitioner-Appellant,**

**v.**

**PHOENIX EMPLOYMENT RELATIONS BOARD, an administrative body, ex rel., AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES ASSOCIATION, LOCAL 2384; American Federation of State, County and Municipal Employees Association, Local 2960; Phoenix Law Enforcement Association; and Phoenix Fire Fighters Association, Local 493, Real Parties in Interest, Respondents-Appellees.**

**No. 1 CA–CIV 6808.**

Court of Appeals of Arizona, Division 1, Department D.

April 2, 1985.

Reconsideration Denied May 14, 1985.

Roderick G. McDougall, City Atty. by Alan S. Max, Asst. City Atty., and Kaplan, Jacobowitz, Hendricks and Bosse, P.A. by James P. Hendricks, Phoenix, for City of Phoenix.

Whitten & Brown, Ltd. by Robert C. Whitten and William R. Brown, Phoenix, for Phoenix Employment Relations Bd.

McKendree & Lubin by Stanley Lubin and Loretta Jacobs-Schwartz, Phoenix, for American Federation of State, County and Municipal Employees Ass'n, Locals 2384, and 2960.

Napier & Jones, P.C. by Michael Napier, Phoenix, for Phoenix Law Enforcement Ass'n.

MEYERSON, Presiding Judge.

The central issue in this appeal concerns the collective bargaining obligations imposed upon the City of Phoenix and its public employee representatives under the

City's "meet and confer" ordinance. For the reasons hereafter stated, we affirm the ruling of the trial court which held that the City committed an unfair labor practice by agreeing, prior to any negotiations, to be bound by voluntary federal wage and price guidelines. The facts forming the background of this dispute can best be understood by first reviewing the City's meet and confer ordinance.

## I. THE MEET AND CONFER ORDINANCE

The City of Phoenix, like many other municipalities throughout the United States, has adopted what is commonly known as a meet and confer ordinance. Phoenix, Ariz., Ordinance No. G–1532 *as amended* (eff. July 1, 1976).[1] The preamble to the ordinance recognizes the right of public employees to organize and notes that "full acceptance of the principle and procedure of full communication between public employers and public employee organizations can alleviate various forms of strife and unrest." § 1(2). While acknowledging the distinction between public and private employees, the preamble to the ordinance declares:

It is the purpose of this ordinance to obligate the City, public employees, and their representatives, acting within the framework of the law, to enter into discussions with affirmative willingness to resolve grievances and disputes relating to wages, hours and working conditions.

§ 1(4). The ordinance establishes the Phoenix Employment Relations Board (PERB) which is granted the power to conduct elections, resolve matters of certification or decertification and investigate claims of violations of the ordinance. § 3.

The ordinance delineates the rights of City management, § 5, as well as the rights of public employees. § 6. The sections of the ordinance which are most pertinent to the present appeal concern the obligations of the parties to meet and confer for the purpose of reaching a memorandum of understanding. A memorandum of understanding is a written agreement arrived at by the representatives of the City and the representatives of public employees which is to be presented to the City Council and to the membership of the authorized employee organizations for their approval. § 2(11). Subject to certain restrictions which are not relevant here, a memorandum of understanding may extend to matters regarding wages, hours and working conditions. § 7(A). In order to reach a memorandum of understanding, the ordinance requires the City Manager (or his designee) to serve as the City's representative to meet and confer with designated representatives of authorized employee organizations. § 10(A).

The obligation to meet and confer is the core of this litigation. The ordinance defines meet and confer as:

[T]he performance of the mutual obligation of the public employer through its chief administrative officer or his designee and the designees of the authorized [employee] representative *to meet* at reasonable times, including meetings in advance of the budget making process; *and confer in good faith with respect to wages, hours and other terms and conditions of employment* or any question arising thereunder, and the execution of a written memorandum of understanding embodying all agreements reached, but such obligation does not compel either party to agree to a proposal or the making of a concession.

§ 2(10) (emphasis added). If a dispute arises during the course of the meet and confer process, either party may request that PERB determine that an impasse exists and that the matter be submitted to the Federal Mediation and Conciliation Service. § 11(A). If the parties are still unable to

1. At oral argument, the parties advised the Court that subsequent to the filing of the briefs, the meet and confer ordinance was amended.

No contention was made, however, that any amendment(s) affect the disposition of this appeal.

resolve the dispute, the dispute may be submitted to a fact finder or if agreed upon by both parties, referred directly to the City Council. § 11(B). Finally, the ordinance identifies certain unfair employee relations (labor) practices, § 12, and enumerates certain other prohibited activities. § 13.

It is apparent from the foregoing description that the meet and confer ordinance establishes a procedure whereby City management and employee representatives are expected to negotiate in good faith and reach an agreement concerning wages, hours, and other working conditions. It is anticipated that the negotiations, which are the essence of the meet and confer process, will produce a memorandum of understanding reflecting the agreement between City management and the employee representatives. Importantly, the final decision-making authority is expressly reserved to the Phoenix City Council because the memorandum of understanding is not to be effective until it is approved by the Council. § 7(C). Against this backdrop, we now turn to the facts of the case before us.

## II. FACTS

On December 4, 1979, the Mayor and Council met with the City Manager to discuss the City's compliance with wage guidelines to be adopted by the federal Council on Wage and Price Stability. The City Council agreed that the City should advise the federal government of the City's intention to comply with the pay standards soon to be promulgated. That same day, the City Manager wrote to the Council on Wage and Price Stability advising it of the City's intent to comply with the pay standard.

Negotiations with the appellee employee organizations began shortly thereafter. The trial court found that there was substantial evidence in support of PERB's conclusion that the City took the position during these negotiations that the federal guidelines were mandatory and that the

City would not consider exceeding them. The trial court characterized the City's position as one affirming that the guidelines were to be an "absolute ceiling, rigidly adhered to" by the City's negotiators. In separate meetings with each of the different employee representatives, the City's chief negotiator consistently took the position that the City's decision to comply with the federal wage guidelines was not negotiable.

Ultimately, on February 12, 1980, the employee organizations filed unfair labor practice charges with PERB alleging that the City's conduct constituted a refusal to meet and confer with respect to wages and that such action was an interference with employee rights. A hearing on these charges was held during October, 1980, and on January 6, 1981, a hearing officer submitted his recommendation and proposed order to PERB. PERB adopted the hearing officer's recommendations in all material respects. PERB concluded that the City's insistent adherence to the wage guidelines constituted a failure to meet and confer in good faith with the employee organizations in violation of § 12(A)(5) of the ordinance. Thereafter, the City filed this special action in superior court. In September, 1982, judgment was entered affirming PERB's decision. The trial court found that the City's "unmoveable position with regard to voluntary guidelines indicates a lack of good faith and bargaining." The trial court found that there was substantial evidence to support PERB's conclusion that an unfair labor practice had been committed by the City. The City has filed this appeal from the superior court judgment affirming the ruling by PERB.

## III. STANDARD OF REVIEW

PERB's function in these matters is similar to that of the National Labor Relations Board (NLRB) in the private sector. Just as the federal courts uniformly defer to the expertise of the NLRB to make the initial determination of whether an employer's conduct demonstrates an un-

willingness to bargain in good faith, *e.g.,* *Seattle-First Nat'l Bank v. NLRB,* 638 F.2d 1221, 1226 (9th Cir.1981), we conclude that similar deference must be given to PERB with respect to its findings pertaining to the conduct of the parties in this case. *Cf. All American School Supply Co. v. Slavens,* 125 Ariz. 231, 232, 609 P.2d 46, 47 (1980). A labor board's decision and order will be enforced if it correctly applies the law and if the board's findings of fact are supported by substantial evidence on the record as a whole. *NLRB v. Bighorn Beverage,* 614 F.2d 1238, 1240 (9th Cir. 1980).

■ In reviewing PERB's decision, the trial court relied upon federal cases involving the NLRB. The obligation to bargain collectively under the National Labor Relations Act (Act) is quite similar to the meet and confer obligation under the City's ordinance. The Act defines collective bargaining as the "performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment." 29 U.S.C. § 158(d). Because the good faith bargaining obligation under the City's ordinance is apparently modeled after the federal Act, we believe that the trial court was correct in considering PERB's decision in light of applicable federal precedent. *See Kaleva-Norman-Dickson School Dist. v. Kaleva-Norman-Dickson School Teachers' Ass'n,* 393 Mich. 583, 590–91, 227 N.W.2d 500, 503 (1975) (Michigan courts will follow federal labor relations decisions because state public employment relations act is similar to federal law).

## IV. HARD BARGAINING OR LACK OF GOOD FAITH

■ The City's central contention on appeal is that PERB erred in finding that the City committed an unfair labor practice by not bargaining in good faith. The City contends that its conduct amounted to "hard bargaining" and that hard bargaining is not a prohibited labor practice. Hard bargaining has been defined as follows:

[T]he Company may insist on a proposal, however unacceptable to the Union, and if the insistence 'is genuinely and sincerely held ... it may be maintained forever though it produces a stalemate.'

*Pease Co. v. NLRB,* 666 F.2d 1044, 1049 (6th Cir.1981). In *Pease,* the administrative law judge found that all issues were discussed between the parties and principal issues were discussed at length. The contrary is true in this case. The trial court found that there was substantial evidence to support PERB's findings that the City's "[a]dherence to the position that ... the resultant guidelines were mandatory precluded the honest give-and-take of bargaining which could consider all of the rationale and arguments of the employee organizations participating in the meet and confer process." Although one party to the collective negotiating process may adhere to a position throughout the negotiations, that party must nevertheless submit the issue to negotiation and engage in a full exchange of communication pertaining to its position. "[R]efusals to discuss mandatory subjects of bargaining run afoul of [collective] bargaining requirements." *NLRB v. Big Three Indus., Inc.,* 497 F.2d 43, 47 (5th Cir.1974). The City does not deny that "wages" are a mandatory subject of bargaining.

For example, in *Pasco County School Bd. v. Florida Pub. Employees Relations Comm'n,* 353 So.2d 108 (Fla.Dist.Ct.App. 1977), the court upheld a labor board finding of an unfair labor practice where the county school board refused to negotiate on the subject of salary increases. The school board approved a five percent cut in salaries based upon a concern over a budget deficit and because of an attempt to comply with a state department of education rule. While noting that the school board was not required to acquiesce to the

employees' demands, the court held that the "Board's expressed reason for not bargaining on the ground of its uncertain fiscal future cannot be excused. It was mandated by the Act to offer reasonable counterproposals." *Id.* at 124. Neither party to collective bargaining negotiations may maintain a "take it or leave it" attitude. *NLRB v. Insurance Agents' Int'l Union,* 361 U.S. 477, 485, 80 S.Ct. 419, 425, 4 L.Ed.2d 454, 462 (1960).

■ A decision closely on point is the holding of the Wisconsin Employment Relations Commission in *School Dist. of West Allis-West Milwaukee v. West Allis-West Milwaukee Educ. Ass'n,* Decision No. 17091 (Wis.Employ.Rel.Comm'n June 22, 1979). During negotiations between the parties, a dispute arose concerning an economic proposal made by the employee association representatives which the school district alleged was in excess of the pay standards established by the Council on Wage and Price Stability. The school district filed a petition before the Commission seeking a declaratory ruling to determine whether the association's economic proposal, which was in excess of the federal pay standard, was a prohibited subject of bargaining or in the alternative whether it was a permissive subject of bargaining. The Commission concluded that the association's economic proposal which exceeded the pay standard was a mandatory subject of bargaining. The Commission held that the school district had an "obligation to bargain collectively concerning the economic proposals of the [association] despite the fact that such proposals may be in excess of the pay standard of the United States Council on Wage and Price Stability." Slip

op. at 3. The Commission found that it was undisputed that the pay standard was voluntary. It stated that it was "difficult to comprehend the District's apparent belief that the [Commission] had the authority to declare that a proposal in excess of the pay standard is prohibited." Slip op. at 6–7. Finally, and more to the point in our case, the Commission recognized that in "collective bargaining, the choice of whether and under what circumstances the pay standard should or should not be exceeded is thus left to the collective bargaining process and ultimately the mediator-arbitrator." Slip op. at 7–8.[2]

■ Similarly, the question of whether the City should have complied with the federal pay standard was a question that should have been submitted for discussion and negotiation during the meet and confer process with the ultimate resolution by the Phoenix City Council. The meet and confer ordinance is a procedural vehicle designed to foster an exchange of ideas between City management and its employee representatives. If management is allowed to unilaterally act on mandatory subjects of negotiation, such as wages, and thereby frustrate and preempt the give and take of negotiations, the salutary benefits as well as the legal requirements of the negotiation process will not be obtained.

■ The City also argues that PERB's decision violates the Phoenix City Charter because under the charter the determination of policy (compliance with the wage and price guidelines) is a matter exclusively vested in the City Council. This argument ignores the fact that the meet and confer ordinance establishes a *procedure* which the City Council itself had adopted by which certain policy decisions are to be made. The employee organizations do not

---

**2.** The City relies upon two public sector cases. *Pennsylvania Labor Relations Bd. v. State Liquor Control Bd.,* 28 Pa.Commw. 145, 367 A.2d 805 (1977); *New Jersey v. Council of New Jersey State College Locals,* 153 N.J.Super. 91, 379 A.2d 63 (1977). We decline to follow the holding of the Pennsylvania Commonwealth Court. The liquor board negotiators were instructed to offer no greater than a 3.5% wage increase and "no rationale for this position was given either

to the [liquor board] negotiator or the [union]." 28 Pa.Commw. at 147, 367 A.2d at 806. In our view, such a position would not constitute "good faith" negotiations. In the New Jersey case, the public employer had given an "ultimatum" that there would be no salary increases, but, unlike the case before us, the labor board found that the state had given "good faith economic reasons" in support of its position.

suggest that they be vested with the decision-making authority to determine City policy. They recognize that the meet and confer ordinance vests policy-making authority with the City Council. The employee organizations have only suggested, and correctly so, that the terms of the meet and confer ordinance be followed and that issues which are subject to negotiation be, in fact, negotiated as a predicate to final action by the City Council.

█ As a related point, the City urges that PERB acted arbitrarily and capriciously and contrary to law when it failed to apply the "totality" standard. Federal law provides that in considering whether parties have fulfilled their good faith bargaining obligation, the entire conduct of both sides must be scrutinized. *E.g., NLRB v. Insurance Agents' Int'l Union,* 361 U.S. 477, 498, 80 S.Ct. 419, 432, 4 L.Ed.2d 454, 469 (1960). Although this general principle is correct, it does not apply under the facts of this case. The totality standard does not apply where a party to negotiations has absolutely refused to negotiate on a mandatory subject.

> Clearly, the duty [to meet and confer in good faith with respect to wages] may be violated without a general failure of subjective good faith; for there is no occasion to consider the issue of good faith if a party has refused even to negotiate *in fact*—'to meet ... and confer'—about any of the mandatory subjects. A refusal to negotiate *in fact* as to [wages, hours, and other terms and conditions of employment] ... violates [the Act] though the employer has every desire to reach agreement with the union upon an over-all collective agreement and earnestly and in all good faith bargains to that end.

*NLRB v. Katz,* 369 U.S. 736, 743, 82 S.Ct. 1107, 1111, 8 L.Ed.2d 230, 236 (1962). The totality standard is therefore not applicable in a case in which a party to the negotiation process completely refuses to discuss a mandatory subject of negotiation.

## V. OTHER ISSUES

█ The City raises a number of additional issues in support of its request that PERB's ruling be reversed. These issues are discussed rather summarily because we have concluded that they lack any substantial merit. First, the City argues that PERB erred by failing to apply its own precedent regarding mootness. The City also suggests that the entire dispute is moot because the parties ultimately negotiated a memorandum of understanding. PERB points out that it has changed its position with respect to mootness and that it has overruled the decision upon which the City relies. Furthermore, an issue is not moot if it is "'capable of repetition, yet evading review.'" *KPNX Broadcasting Co. v. Superior Court,* 139 Ariz. 246, 250, 678 P.2d 431, 435 (1984). The issues in this case which concern the implementation of the City's meet and confer ordinance will undoubtedly arise again. Because it is unlikely that any resolution of these issues could occur during the normally scheduled collective bargaining process, it can easily be seen that such issues would otherwise evade review. We decline to apply the mootness doctrine in this case.

The City also contends that PERB erred by failing to conclude that the Phoenix Law Enforcement Association's "strike" precluded the finding that the City had engaged in an unfair labor practice. The trial court found that there was substantial evidence in support of PERB's finding that there was no strike. In any event, the City has offered us no authority which suggests that an unfair labor practice by one of several public employee organizations seeking a collective bargaining agreement excuses an employer's unfair labor practice.

█ Next, the City argues that PERB committed error by failing to conclude that certain conduct by the hearing officer was prejudicial. It is undisputed that the hearing officer, outside of the record, contacted the Council on Wage and Price Stability in order to determine whether or not the guidelines were mandatory or voluntary. The City suggests that this conduct amounted to prejudicial error. "[T]o constitute fatal error it must appear that an administrative agency's journey outside the record worked substantial prejudice."

*NLRB v. Johnson,* 310 F.2d 550, 552 (6th Cir.1962). Because the other evidence in the record overwhelmingly establishes that these federal guidelines were voluntary and not mandatory, we agree with the conclusion of the trial court that no prejudice was shown in this case.

Finally, the City argues that PERB erred in concluding that the federal guidelines were voluntary. The City acknowledges that the guidelines were technically voluntary, but suggests that sanctions could have been imposed upon public agencies which failed to follow the guidelines. The City offers no authority for that proposition. The trial court found that the "City took its mandatory position as a means of keeping wage costs down and without any factual or legal support for that position." We agree with this determination.

For the foregoing reasons the judgment of the superior court is affirmed.

GRANT and HAIRE, JJ., concur.