142 P.3d 234

**AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO, LOCAL 2384, Plaintiff/Appellant/Cross–Appellee,**

v.

**CITY OF PHOENIX, Defendant/Appellee/Cross–Appellant,**

The City of Phoenix Employment Relations Board, Defendant/Appellee.

No. 1 CA–CV 04–0766.

Court of Appeals of Arizona, Division 1.

Aug. 15, 2006.

Review Denied Jan. 9, 2007.

Martin & Bonnett, P.L.L.C. by Daniel L. Bonnett, Susan Martin, Jennifer L. Kroll, Phoenix, Attorneys for Plaintiff/Appellant/Cross–Appellee.

Office of the City Attorney, Gary Verburg, Acting City Attorney by L. Michael Hamblin, Assistant City Attorney, Phoenix, Attorneys for Defendant/Appellee/Cross–Appellant City of Phoenix.

William R. Brown, Phoenix, Attorney for Defendant/Appellee the City of Phoenix Employment Relations Board.

National Right to Work Legal Defense Foundation, Inc. by John R. Martin, Springfield, VA, and Perkins Coie Brown & Bain P.A. by Kandace B. Majoros, Michael T. Liburdi, Clinten N. Garrett, Phoenix, Attor-

neys for National Right to Work Legal Defense Foundation, Inc., Amicus Curiae.

WINTHROP, Judge.

¶1 The American Federation of State, County, and Municipal Employees, AFL–CIO, Local 2384 ("the Union") appeals from the superior court's judgment in favor of the City of Phoenix ("the City"). The Union argues that the superior court erred in finding that the Union's proposed mandatory deductions from non-union workers' wages, or "fair share" proposals, are illegal under Arizona state law; violate the City's "meet and confer" ordinance; and, even if legal, are a permissive rather than mandatory subject of collective bargaining. The City cross-appeals, arguing that the superior court erred in determining that Arizona's wage withholding statute, Arizona Revised Statutes ("A.R.S.") section 23–352 (1995), would not necessarily preclude an agreement involving "fair share." After considering the arguments presented, we hold that the "fair share" proposals are impermissible under Arizona's constitution and "right to work" statutes, and therefor affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 The Union is an employee labor organization recognized by the City as the exclusive bargaining representative for all City employees within a designated bargaining unit (Field Unit II or Local 2384) under the "meet and confer" ordinance, Article XVII, Division 1, of the Phoenix City Code ("P.C.C."). *See generally* P.C.C. §§ 2–216, – 217. As such, the Union is required by law to represent all Unit II employees without regard to union membership in negotiating, administering, and enforcing collective bargaining agreements. *See* P.C.C. § 2–217(E). The Union's principal source of income is membership dues collected from Unit II employees who are Union members. However, the City also provides financial assistance to the Union to aid the Union in acting as exclusive bargaining representative for all Unit II employees, including paying the full salary and benefits of three full-time Union officials and providing the Union with another 3610 paid hours annually.

¶3 On November 30, 2001, during the compulsory "meet and confer"[1] process, the Union and two other unions proposed a mandatory union contribution, or "fair share,"[2] provision (in which all workers, including non-union workers, would be required to contribute to the unions for services performed for the workers' benefit) in the unions' original labor proposals submitted to the City. The City responded that it was "not in agreement," but indicated it would discuss the issue during negotiations. From January through April 2002, the parties negotiated, and the unions made several proposals for achieving "fair share."[3]

---

1. In 1976, the Phoenix City Council adopted the "meet and confer" ordinance, current P.C.C. §§ 2–209 to –222. *See City of Phoenix v. Phoenix Employment Relations Bd.,* 145 Ariz. 92, 94, 699 P.2d 1323, 1325 (App.1985). In pertinent part, the term "meet and confer" means

   the performance of the mutual obligation of the public employer through its chief administrative officer or his designee and the designees of the authorized representative to meet at reasonable times, including meetings in advance of the budget making process; and to confer in good faith with respect to wages, hours and other terms and conditions of employment or any question arising thereunder, and the execution of a written memorandum of understanding embodying all agreements reached.

   P.C.C. § 2–210(11).

2. The term "fair share" is frequently used in labor-management circles to describe situations

in which a labor organization, acting as an exclusive bargaining representative, seeks to recover from non-union employees in the bargaining unit a pro rata share of expenses incurred by the union for negotiation, administration, and enforcement of collective bargaining agreements benefitting all members of the bargaining unit without regard to union membership.

3. As proposed at various times by the Union, "fair share" would require as a term and condition of employment that all Unit II employees contribute to the Union, by the signing of a payroll deduction card, an amount equal to the costs to the Union for bargaining and representation; or would have the City automatically deduct such an amount from all non-dues paying Unit II members; or would require the City to call the fees "assessments" and deduct from employees' pay up to eighty percent of dues for full Union membership.

¶4 The unions maintained that non-union employees should be required to pay a pro rata share of the unions' actual costs of negotiating and administering collective bargaining agreements. Although conceding that traditional "agency shop" agreements [4] were prohibited in Arizona, the unions argued that, unlike "right to work" provisions found in some other states' constitutions and statutes, nothing in Arizona's constitution or statutes specifically prohibited requiring the payment of a pro rata share of a union's expenses, or similar fees, as a term or condition of employment. Thus, "fair share" contributions as proposed by the unions would be something less than the full equivalent of union dues.

¶5 The City's ultimate position was that "fair share" was illegal and, even if legal, a permissive rather than mandatory subject of bargaining. Consequently, the City eventually requested that the unions drop their request for the inclusion of "fair share" as a condition for reaching an agreement. The City claimed that not only is "fair share" not a subject of mandatory collective bargaining under the City's "meet and confer" ordi-

nance, but involuntary collection of a "fair share" of the unions' expenses of negotiating, administering, and enforcing collective bargaining agreements from non-union members would be in violation of Article 25 of the Arizona Constitution [5] and Arizona's "right to work" laws, A.R.S. §§ 23–1301 to –1307 (1995).[6] The City also argued that including any language in a current or future Memorandum of Understanding ("MOU") [7] requiring non-union employees to pay their "fair share" of the unions' expenses would violate A.R.S. § 23–352 [8] and subject the City to liability for the allegedly wrongful withholding of the payment of employees' wages, including treble damages and attorneys' fees under A.R.S. § 23–355 (1995).

¶6 The unions and the City eventually entered an MOU without a "fair share" provision for contract years 2002–2004, but included contract "re-opener" language on the subject of "fair share" in the event the unions eventually prevailed on that issue. Additionally, on April 24, 2002, the unions jointly filed an Unfair Labor Practice ("ULP") charge, Case No. CA–180, with the City of Phoenix Employment Relations Board ("PERB"),[9] ar-

---

**4.** Under an "agency shop" agreement, a union that acts as the exclusive bargaining representative for a group of employees may charge non-union employees a fee for acting as their collective bargaining representative. *See Chicago Teachers Union, Local No. 1, AFT, AFL–CIO v. Hudson,* 475 U.S. 292, 303 n. 10, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986) (citing R. Gorman, *Basic Text on Labor Law* 642 (1976)). The fee is frequently equal to the prevailing union dues and employees who fail to pay the fee may have their positions terminated. *See, e.g., Baldwin v. Ariz. Flame Rest., Inc.,* 82 Ariz. 385, 394, 313 P.2d 759, 766 (1957).

**5.** Article 25 of the Arizona Constitution prohibits compulsory union membership as a condition of employment:

No person shall be denied the opportunity to obtain or retain employment because of non-membership in a labor organization, nor shall the State or any subdivision thereof, or any corporation, individual or association of any kind enter into any agreement, written or oral, which excludes any person from employment or continuation of employment because of non-membership in a labor organization.

**6.** Arizona Revised Statutes § 23–1302 codifies Article 25 of the Arizona Constitution.

**7.** The term "Memorandum of Understanding" "means a written memorandum of understand-

ing arrived at by the representatives of the City and an authorized [union] representative, which shall be presented to the City Council and to the membership of the authorized employee organization for appropriate action." P.C.C. § 2–210(12). Thus, an MOU is a collective bargaining agreement between the City and a union.

**8.** Arizona Revised Statutes § 23–352 specifies the situations in which an employer may withhold an employee's wages:

No employer may withhold or divert any portion of an employee's wages unless one of the following applies:
1. The employer is required or empowered to do so by state or federal law.
2. The employer has prior written authorization from the employee.
3. There is a reasonable good faith dispute as to the amount of wages due, including the amount of any counterclaim or any claim of debt, reimbursement, recoupment or set-off asserted by the employer against the employee.

**9.** The PERB is an administrative board charged with the responsibility of carrying out the laws of the City regarding its "meet and confer" ordinance, and has numerous powers and duties, including the exclusive authority to adjudicate ULP charges. P.C.C. § 2–211(H). The PERB is made up of five citizen volunteers appointed by

guing that the negotiations leading to the MOU constituted a violation of P.C.C. § 2–220(A)(5) (refusing to meet and confer). The unions sought a determination that "fair share" is a mandatory subject of bargaining under P.C.C. § 2–215(A) [10] of the City's "meet and confer" ordinance, and further sought an order from the PERB directing the City to "meet and confer" and bargain in good faith with the unions on that issue. On May 22, 2002, the PERB issued its Decision and Order, finding that "fair share" is a permissive rather than mandatory subject of bargaining under P.C.C. § 2–215(A), and ordering the dismissal of the ULP charge.

¶ 7 On June 21, 2002, the unions filed a "Complaint for Special Action Review and for Declaratory Relief," challenging the PERB's determination that the unions' "fair share" proposals are a subject of permissive rather than mandatory bargaining under the P.C.C. The Union eventually filed an amended complaint, and the other two unions withdrew as plaintiffs, leaving the Union as the only plaintiff. On April 23, 2003, pursuant to stipulation of the parties, the Union filed a "Second Amended Complaint for Special Action Review and for Declaratory Relief" seeking, *inter alia,* (1) a declaration that the Union's "fair share" proposals are the subject of mandatory bargaining under P.C.C. § 2–215(A) of the City's "meet and confer" ordinance; (2) an order directing the PERB to vacate its May 22 order finding that the subject of "fair share" is a permissible rather than mandatory subject of bargaining; (3) a declaration that "fair share" as requested by the Union is not contrary to the Arizona Constitution or Arizona statutes; and (4) an

order directing the City to negotiate in good faith with the Union on the subject of "fair share."

¶ 8 In June 2003, the PERB moved to dismiss Count II of the Second Amended Complaint, in which the Union sought declaratory relief. The PERB argued that such a request was procedurally inappropriate because it could not be made on a special action review of an administrative decision, and, because the superior court's review should be limited solely to the review of the administrative order and the Union had failed to exhaust its administrative remedies, jurisdiction was lacking. The City joined the motion, and the Union opposed the motion.

¶ 9 Following hearings on August 11 and September 4, 2003, and before ruling on the merits of the special action, the superior court determined that the PERB had the authority to decide the issue of the legality of "fair share." Further, because the legality issue had not been decided at the administrative level, the court remanded the matter to the PERB to determine that issue. The court also ruled that the issue whether the Union could bring a declaratory judgment action in a special action review of an administrative decision (the issue posed by Count II) was moot.

¶ 10 On October 21, 2003, the PERB, by a 3–2 vote, issued another "Decision and Order," concluding "that the concept of fair share, or mandatory assessment of fees for services provided by an employee organization, does not violate the Arizona Constitution, Right to Work laws, or Section 2–214(A) of the Phoenix City Code." [11] Thereafter, the

---

the City's mayor and City Council and is similar in purpose and effect to the National Labor Relations Board. *See* P.C.C. § 2–211(A)–(B); *Phoenix Employment Relations Bd.,* 145 Ariz. at 95, 699 P.2d at 1326.

**10.** Subsection (A) of P.C.C. § 2–215 provides as follows:

The provisions contained in the 1988–90 and subsequent memoranda of understanding are mandatory subjects of bargaining. Other subjects are permissible subjects of bargaining and shall be discussed during collective bargaining. This paragraph is subject to the following:
   1. Federal and State laws.

2. The authority and jurisdiction of the Phoenix Civil Service Board and of the Personnel Official under Chapter XXV, Charter of the City of Phoenix, shall not be diminished by the operation of this ordinance.
3. The impasse procedures of this ordinance shall not apply to permissive subjects of bargaining.

**11.** Subsection (A) of P.C.C. § 2–214 provides in pertinent part:

Public employees shall have the right to form, join and participate in any employee organization of their own choosing, or to refrain from forming, joining, or participating in same.

City filed an amended separate answer and cross-claim, alleging that the PERB had erred in concluding that "fair share" does not violate Article 25 of the Arizona Constitution, A.R.S. §§ 23–1303 to –1305, and P.C.C. § 2–214, and in failing to conclude that non-voluntary wage deductions and transfers to a union for services provided violates A.R.S. § 23–352 (the wage withholding statute).

¶ 11 After extensive briefing, the superior court ordered that oral argument be held on August 23, 2004, and directed the sides to file with the court a two-page summary of argument addressing all issues raised. In its summary and at oral argument, the Union argued that "fair share" fees are legal and a mandatory subject of collective bargaining. Although the City conceded that "fair share" fees are legal under the United States Constitution, it argued that such fees are not legal under (1) the Arizona Constitution and Arizona's "right to work" statutes, (2) Arizona's wage withholding law, and (3) the City's "meet and confer" ordinance. Further, the City argued, if illegal, "fair share" fees cannot be mandatory, and, even if legal, such fees are at best a permissive subject of bargaining under the P.C.C.

¶ 12 Following oral argument, the superior court issued a minute entry dated September 2, 2004, in which the court concluded "that the Union's 'fair share' proposals are illegal under Arizona law and not subject to collective bargaining." In pertinent part, the superior court reasoned as follows:

> The Union's "fair share" proposals would require all members of the affected bargaining unit to pay a *pro rata* portion (perhaps 80 percent, perhaps less) of regular union dues to compensate the Union for its activities as exclusive bargaining agent. The Union appears to concede that a straight dollar-for-dollar correlation with union dues would fit the classic definition of an "agency shop" (union membership not required but dues equivalent required to be paid) and would be illegal under Arizona law. The Union notes, for example, that "No Arizona court has ruled that a mandatory payment of any fee or assessment in an amount *less* than the full equivalent of union membership dues is con-

trary to Arizona law." Significantly, the "fair share" payment, as proposed by the Union, would involve either execution of a wage withholding card or an implied agreement (through the collective bargaining process) by the individual employee to a deduction, either of which would be compulsory, with the employee's failure to agree constituting grounds for termination.

> There are no equities or "fairness" issues before the Court in this purely legal dispute. The "free rider" concern (non-union employees who benefit from the Union's collective bargaining on their behalf) is addressed by the City's uncontradicted statement that it pays full salary and benefits for three officials to perform full-time duties for the Union and also allows the Union 3610 paid hours per year.

> The parties note that the United States Supreme Court has used the terms "agency shop agreement" and "fair share" interchangeably. The City cites a labor law treatise and a Florida court of appeals decision as finding "no real difference" between the two. The City relies upon, and the Union criticizes, two opinions of the Arizona attorney general stating that "agency shops" violate Arizona's "right to work" laws. This Court cannot, of course, say with certainty whether an Arizona appellate court would follow *Wessel vs.[v.] City of Albuquerque*, 299 Fed.3d [F.3d] 1186 (10th Cir.2002) (*pro rata* payment not illegal) or *Plumbers Local 141 vs.[v.] NLRB*, 675 Fed.2d [F.2d] 1257 (D.C.Cir. 1982) (*pro rata* share illegal in certain right-to-work states). In reviewing the cited authorities, the Court agrees with the City that it is the *compulsion* and not the *amount* which is determinative, and that an Arizona appellate court would likely so hold in this case of first impression.

Although not necessary to its decision, the superior court further ruled that the Union's "fair share" proposals violate P.C.C. § 2–214(A) of the City's "meet and confer" ordinance; Arizona's wage withholding statute, A.R.S. § 23–352, would not necessarily preclude an agreement for the mandatory deductions proposed; and, pursuant to P.C.C. § 2–215(A) and the previous MOUs, the Un-

ion's "fair share" proposals are permissive rather than mandatory subjects of collective bargaining. On October 4, 2004, the superior court issued its signed judgment in favor of the City.

¶ 13 The Union filed a timely notice of appeal, and the City filed a notice of cross-appeal. Additionally, the National Right to Work Legal Defense Foundation, Inc. ("the Foundation") filed a motion for leave to file an *amicus curiae* brief, and this court granted the motion. We have jurisdiction to decide this appeal. *See* A.R.S. §§ 12–120.21(A)(1) (2003), –2101(B) (2003); *see also Ayala v. Hill,* 136 Ariz. 88, 90, 664 P.2d 238, 240 (App.1983).

## ANALYSIS

■ ¶ 14 The Union argues that the superior court erred in finding that the Union's "fair share" proposals are illegal under Arizona state law; violate the City's "meet and confer" ordinance; and, even if legal, are a permissive rather than mandatory subject of collective bargaining. The City cross-appeals, arguing that the superior court erred in determining that Arizona's wage withholding statute, A.R.S. § 23–352, would not necessarily preclude an agreement involving "fair share." For the following reasons, we hold that the Union's proposed "fair share" fee violates Article 25 of the Arizona Constitution and Arizona's "right to work" statutes.[12]

■ ¶ 15 Because the issues raised involve questions of law and the interpretation of statutes, we review the trial court's judg-

ment *de novo. See Hall v. Lalli,* 194 Ariz. 54, 57, ¶ 5, 977 P.2d 776, 779 (1999); *City of Tempe v. Outdoor Sys., Inc.,* 201 Ariz. 106, 109, ¶ 7, 32 P.3d 31, 34 (App.2001). In interpreting the Arizona Constitution, we "follow the text and the intent of the framers." *Fain Land & Cattle Co. v. Hassell,* 163 Ariz. 587, 595, 790 P.2d 242, 250 (1990). In so doing, and in interpreting related statutes, we first examine the plain language of the provisions involved. *See Jett v. City of Tucson,* 180 Ariz. 115, 119, 882 P.2d 426, 430 (1994); *Arpaio v. Steinle,* 201 Ariz. 353, 355, ¶ 5, 35 P.3d 114, 116 (App.2001). When a constitutional or statutory provision is clear on its face and is logically capable of only one interpretation, we simply follow that text. *See Ward v. Stevens,* 86 Ariz. 222, 228, 344 P.2d 491, 495 (1959); *Arpaio,* 201 Ariz. at 355, ¶ 5, 35 P.3d at 116. When a constitutional or statutory provision is not clear, we may look to the context, subject matter, historical background, effects, consequences, spirit, and purpose of the law. *See In re Moises L.,* 199 Ariz. 432, 433, ¶ 6, 18 P.3d 1231, 1232 (App.2000); *State v. Superior Court (Coronado),* 186 Ariz. 363, 365, 922 P.2d 927, 929 (App.1996). We strive to interpret a constitutional provision or statute in a manner that gives meaning to all of its language. *See Curtis v. Morris,* 184 Ariz. 393, 397, 909 P.2d 460, 464 (App.1995).

¶ 16 The United States Constitution does not bar an employer from requiring that non-union employees, as a condition of employment, pay a "fair share" of a union's cost of negotiating and administering a collective

---

12. Both the City and the Foundation suggest that we decide this appeal based on the City's "meet and confer" ordinance rather than examining whether "fair share" is permitted by the Arizona Constitution and Arizona's "right to work" statutes. However, an analysis of the state constitutional and statutory provisions on the same subject as the City ordinance is controlling and dispositive. *See, e.g., Union Transportes de Nogales v. City of Nogales,* 195 Ariz. 166, 169, ¶ 9, 985 P.2d 1025, 1028 (1999) (stating that local government entities possess only that power delegated by state law, and city charters must be consistent with and subject to the state's constitution and laws (citations omitted)); *City of Tucson v. Grezaffi,* 200 Ariz. 130, 135, ¶ 9, 23 P.3d 675, 680 (App.2001) (recognizing that both a city and the state may legislate on the same subject when it is of local concern, but when the subject is also of statewide concern and the legislature has appropriated the field by enacting a pertinent, governing statute, that statute controls and renders any contrary local ordinances invalid (citation omitted)); *City of Tucson v. Consumers For Retail Choice Sponsored by Wal–Mart,* 197 Ariz. 600, 602–03, ¶¶ 6–7, 5 P.3d 934, 936–37 (App.2000) (noting that in matters of solely local concern, a charter city's ordinance supersedes a conflicting state statute, but in matters of both local and statewide concern, a charter city's ordinance may be invalid if it conflicts with a valid state statute or if the state has appropriated the field (citations omitted)). Accordingly, we examine the Arizona Constitution and companion statutes to determine the lawfulness of the proposed mandatory "fair share" fee.

bargaining agreement for those employees if the fees are related to the union's duties as bargaining representative. *See Chicago Teachers Union,* 475 U.S. at 301, 106 S.Ct. 1066 (citing *Abood v. Detroit Bd. of Educ.,* 431 U.S. 209, 234, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977)). In 1935, Congress enacted the National Labor Relations Act ("the NLRA"), *see* 29 U.S.C. §§ 141–187 (2000), in an effort to achieve uniform, effective enforcement of a national labor policy. *NLRB v. Health Care & Ret. Corp. of Am.,* 511 U.S. 571, 573, 114 S.Ct. 1778, 128 L.Ed.2d 586 (1994) (citation omitted); *Hill v. Peterson,* 201 Ariz. 363, 365, ¶ 5, 35 P.3d 417, 419 (App.2001) (citations omitted). Generally, the NLRA preempts state and federal court jurisdiction to remedy conduct that is protected or prohibited by the NLRA. *Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge,* 403 U.S. 274, 276, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971) (citing *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 246, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959)); *Holman v. Bd. of Educ.,* 388 F.Supp. 792, 798 (E.D.Mich.1975) (same). However, § 152(2) of the same Act expressly exempts states or their political subdivisions, such as the City, from the NLRA;[13] thus, the NLRA applies to private rather than public employers. *See NLRB v. Natural Gas Util. Dist. of Hawkins County, Tenn.,* 402 U.S. 600, 604, 91 S.Ct. 1746, 29 L.Ed.2d 206 (1971) (stating that Congress intended to except "the labor relations of federal, state, and municipal governments, since governmental employees did not usually enjoy the right to strike" (citations omitted)); *Holman,* 388 F.Supp. at 799. Further, Title I, Section 14(b), of the Taft–Hartley Act of 1947, *see* 29 U.S.C. § 164(b), which amended the NLRA, specifically recognizes the right of states to pass "right to

work" constitutional amendments or legislation.[14] *See Am. Fed'n of Labor v. Am. Sash & Door Co.,* 67 Ariz. 20, 36, 189 P.2d 912, 923 (1948). Thus, although an "agency shop" agreement, or something akin to such an agreement, is not prohibited under federal law, *see NLRB v. Gen. Motors Corp.,* 373 U.S. 734, 743–44, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963), such an agreement may be prohibited by individual states, *see Retail Clerks Int'l Ass'n, Local 1625, AFL–CIO v. Schermerhorn ("Schermerhorn I"),* 373 U.S. 746, 757, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963), *reargued ("Schermerhorn II"),* 375 U.S. 96, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963), and such prohibition may be applied to both public and private employers.

■ ¶ 17 In Arizona, Article 25 of the Arizona Constitution, adopted by the people of Arizona at the general election held in 1946, specifically prohibits compulsory union membership as a condition of employment, *see supra* note 5, at ¶ 5 (quoting Ariz. Const. art. 25),[15] as do Arizona's "right to work" laws. *See* A.R.S. §§ 23–1301 to –1307. Additionally, we note that the Arizona Attorney General has twice issued opinions concluding that an "agency shop" agreement between an employer and a labor organization, in which all non-union employees would be required to pay to the union an amount equal to regular union dues, would violate Article 25 of the Arizona Constitution and A.R.S. § 23–1302. *See* Op. Ariz. Att'y Gen. I86–049 (May 5, 1986); Op. Ariz. Att'y Gen. 62–2 (Nov. 24, 1961).[16]

¶ 18 The Union concedes that a "traditional agency-shop arrangement," which it defines as requiring the payment by non-union workers of fees equivalent to *full* Union dues, "would most likely run afoul of current Ari-

---

**13.** Section 152(2) defines the term "employer" and states that the term "shall not include … any State or political subdivision thereof."

**14.** "Nothing in this subchapter shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law." 29 U.S.C. § 164(b).

**15.** *See also Am. Fed'n of Labor,* 67 Ariz. at 24–25, 40–41, 189 P.2d at 915, 926 (finding the amendment constitutional).

**16.** Opinions of the Arizona Attorney General are advisory, and thus do not constitute binding precedent. *Logan v. Forever Living Prods. Int'l, Inc.,* 203 Ariz. 191, 194 n. 4, ¶ 10, 52 P.3d 760, 763 n. 4 (2002) (citing *Ruiz v. Hull,* 191 Ariz. 441, 449, 957 P.2d 984, 992 (1998)). Nonetheless, such opinions are due our respect and may be helpful in providing insight as to an issue. *See id.*

zona law." [17] However, the Union argues that Arizona's constitution and "right to work" laws contain less restrictive language than that of some other "right to work" states because those states not only forbid compulsory union membership as a condition of employment, they also specifically bar mandatory payment of any fee or contribution to a union as a term or condition of employment.[18] Arizona's constitution and statutes contain no such specific provision. Thus, the Union argues, such fees or contributions, if paid as a proportionate share of the actual expenditures incurred by the Union for services rendered for the benefit of the collective bargaining unit (and therefore presumably in an amount less than the equivalent of full Union dues), should be legal in Arizona.

¶ 19 The Union relies on *Byrd v. Am. Fed'n of State, County, and Municipal Employees, Council 62*, 781 N.E.2d 713 (Ind.Ct. App.2003), and *Wessel v. City of Albuquerque*, 299 F.3d 1186 (10th Cir.2002), to support its argument that "agency shop" agreements that compel a fee equal to full union dues may be distinguished from "fair share" agreements that compel a portion of such dues. In *Byrd*, the Indiana Court of Appeals held that a former governor's executive order, which provided that certain employees had the right to refrain from assisting any employee organization, did not forbid the collection of "fair share" fees, which the court

distinguished as fees that "assist the Employees themselves." 781 N.E.2d at 721. Thus, the court upheld a more recent executive order, which required the employees to pay "their fair share of the costs of providing Union representation, in an amount not exceeding eighty-five (85%) of the dues required to be paid by employees who are members of the Union." *Id.* at 717.

¶ 20 In *Wessel*, thirteen non-union employees sued the City of Albuquerque, alleging that the City had violated their First Amendment rights through the passage of a "Fair Share Resolution," which provided that collective bargaining agreements with City employee unions could include compulsory deduction of union "fair share" fees from the employees' wages representing the unions' cost of bargaining on their behalf. *Id.* at 1189–90. The City already had an ordinance that stated employees were not required to join the union or take part in union activities, but was silent as to the collection of "fair share" fees. *Id.* at 1190.

¶ 21 The Tenth Circuit Court of Appeals considered the public policy interests of allowing "fair share" fees, including the desirability of labor peace and the elimination of "free riders," [19] and determined that the prior ordinance did not necessarily prohibit those fees. *Id.* at 1190–91. The court further noted that, although some courts had found a conflict between "fair share" resolutions and "right to work" laws, the majority

17. *See Ficek v. Int'l Bhd. of Boilermakers, Local 647*, 219 N.W.2d 860, 865–66 (N.D.1974) (noting that the first state court to hold an "agency shop" provision illegal under a "right to work" law similar to North Dakota's was the Arizona superior court in *Arizona Flame Restaurant, Inc. v. Baldwin*, 26 Lab. L. Rep. (CCH) ¶ 68,647 (Ariz.Super.Ct. Aug. 3, 1954), and the Arizona Supreme Court affirmed the decision, although on other grounds, in *Baldwin*, 82 Ariz. 385, 313 P.2d 759).

18. *See, e.g.*, Okla. Const. art. 23, § 1(B)(3) ("No person shall be required, as a condition of employment or continuation of employment, to: ... Pay any dues, fees, assessments, or other charges of any kind or amount to a labor organization[.]"); Idaho Code Ann. § 44–2001 (2003) ("The right to work shall not be infringed or restricted in any way based on membership in, affiliation with, or financial support of a labor organization or on refusal to join, affiliate with,

or financially or otherwise support a labor organization."); N.C. Gen.Stat. § 95–82 (2005) ("No employer shall require any person, as a condition of employment or continuation of employment, to pay any dues, fees, or other charges of any kind to any labor union or labor organization."); Va.Code Ann. § 40.1–62 (2002) ("No employer shall require any person, as a condition of employment or continuation of employment, to pay any dues, fees or other charges of any kind to any labor union or labor organization.").

19. A "free rider" is an employee who receives the benefits of union representation or membership without paying union dues or other fees. The fact that the City provides substantial financial assistance, *see supra* ¶ 2, to aid the Union in acting as exclusive bargaining representative for all Unit II employees negates to a large extent the Union's contention that non-union employees are enjoying a "free ride" at the expense of the Union and its members.

of those decisions were based on "fair share" deductions equal to the amount of dues paid by union members. *Id.* at 1191 (citing numerous cases, including *Baldwin*, 82 Ariz. at 388–89, 394–95, 313 P.2d at 762, 766, in which the Arizona Supreme Court ultimately found it unnecessary to address the "agency shop" clause). The court distinguished those decisions from situations in which deductions were limited to the pro rata expenses incurred by a union in representing non-members, and noted that when deductions were limited to proportionate costs, courts had generally found no conflict between "fair share" deductions and "right to work" laws. *Id.* at 1191–92 (citing multiple cases). Thus, the court found no conflict between the City's "fair share" resolution and the City's "right to work" ordinance. *Id.* at 1192.

¶ 22 We find *Byrd* and *Wessel* unavailing. Unlike Arizona, neither Indiana nor New Mexico have constitutional or statutory "right to work" provisions. *See, e.g., Byrd,* 781 N.E.2d at 720; *State v. King,* 93 N.M. 715, 605 P.2d 223, 225–27 (1979); *New Mexico Fed'n of Labor v. City of Clovis,* 735 F.Supp. 999, 1003–04 (D.N.M.1990). Thus, no higher authority limited application of the executive order in *Byrd* and the ordinance in *Wessel.* Further, the *Byrd* and *Wessel* courts were examining an existing executive order and ordinance expressly authorizing or mandating a "fair share" fee. *Byrd,* 781 N.E.2d at 717; *Wessel,* 299 F.3d at 1190. No similar authority exists here.[20] Accordingly,

we find the facts forming the basis for the *Byrd* and *Wessel* courts' analysis distinguishable.

¶ 23 Further, we conclude that it is irrelevant whether the fee is for the full amount of union dues or a portion thereof; it is the imposition of a mandatory contribution, or "fair share" service fee, that is impermissible. In its September 2, 2004 minute entry, the superior court recognized that point, when it reasoned "that it is the *compulsion* and not the *amount* which is determinative." The clear intent of the electorate of Arizona in enacting Article 25 of the Arizona Constitution and Arizona's "right to work" laws was to ensure the freedom of workers to choose whether to join and participate in a union. *See Am. Fed'n of Labor,* 67 Ariz. at 34–35, 189 P.2d at 921–22;[21] *see also* A.R.S. §§ 23–1301 to –1307 (Historical and Statutory Notes). Allowing the proposed "fair share" fee would be contrary to the intent voiced by Arizona citizens because it would essentially render meaningless the distinction between union membership and non-membership. Non-members would be forced to contribute to, and thus support, the Union, albeit in an amount slightly less than full union dues. Consequently, the proposed "fair share" fee would, in its practical effect to non-union employees, be little different than mandatory membership dues. *See Grajczyk v. Douglas Aircraft Co.,* 210 F.Supp. 702, 704–05 (S.D.Cal.1962). Such a "fair share" fee is no

---

**20.** In fact, in reaching its decision, the *Wessel* court stated that "[r]equiring employees to help finance the union as a collective bargaining agent is constitutionally justified only if there has been a legislative assessment by the public employer." 299 F.3d at 1190 (citing *Lehnert v. Ferris Faculty Ass'n,* 500 U.S. 507, 517, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991)). Thus, the *Wessel* court recognized that the mere absence of an express prohibition against mandatory fees was insufficient to validate a "fair share" fee.

**21.** In *American Federation of Labor,* our supreme court noted as follows:

The people of the State of Arizona evidently had some deep-seated convictions upon these matters for it required the signatures of fifteen per cent of the qualified electors of the entire state to even propose an amendment to the Constitution, Article 4, Part 1, Section 1(2), and it is a matter of common knowledge that

the arguments for and against the proposed Amendment were fully and completely presented to the people in the pre-election campaign. In adopting the Amendment by a very substantial majority (61,875 votes cast for and 49,557 cas[t] against said measure) the people have in the most solemn manner evidenced their conviction that the matters prohibited by it were detrimental to the public welfare.

67 Ariz. at 34–35, 189 P.2d at 921–22. A further indication of the intent of the citizens of Arizona may be gleaned from the publicity pamphlets submitted by the proponents of the constitutional amendment and "right to work" laws at the time they were under consideration. *See, e.g., State ex rel. Fatzer v. Anderson,* 180 Kan. 120, 299 P.2d 1078, 1087 (1956). One 1946 publicity pamphlet read as follows: "The right to work without paying tribute is an American Heritage." Op. Ariz. Att'y Gen. 62–2 (citing the Arizona superior court in the 1954 *Arizona Flame Restaurant* case, *see* 26 Lab. L. Rep. (CCH) ¶ 68,647).

less onerous to freedom of employment than a compulsory arrangement requiring the payment of full union dues. It is clear that the populace, through constitutional amendment and legislation, intended to forbid both management and labor from imposing, as a condition of employment, the requirement that any person participate in any form or design of union membership. The Union, when it sought certification as the exclusive bargaining agent for all Unit II employees, necessarily accepted the responsibility to represent all of those employees and the risk that it would not be able to collect dues or fees from those employees who decided not to join the Union. Consequently, it would require a narrow, attenuated construction of our existing laws to permit a contract that would require non-union employees to contribute a "fair share" fee to the Union to obtain or retain employment.

¶ 24 We recognize that authority in Arizona is limited on the issue whether the Arizona Constitution and Arizona "right to work" laws prohibit a type of "agency shop" agreement that would require employees to pay a "fair share" fee as a condition of employment. However, the limited authority available supports the conclusion that "agency shop" or compulsory "fair share" agreements of any type are prohibited in Arizona. Although the Arizona Attorney General opinions that we have previously cited involved situations in which non-union employees would have been required to pay to a union an amount *equal* to regular union dues, *see* Op. Ariz. Att'y Gen. I86–049; Op. Ariz. Att'y Gen. 62–2, we do not find that fact a dispositive distinction. In the 1986 opinion, the precise issue presented was: "May the [School District's] Governing Board agree to assess a mandatory fee against non-members of the education association for bargaining services rendered by the association and which fees would then be paid to the association by the district?" Op. Ariz. Att'y Gen. I86–049. Although the question posed was whether the non-union employees would be required to pay a pro rata fee, the question did not specify whether such a fee would be the full equivalent of union dues or something less. In response, the 1986 opinion simply concluded that "[m]andatory union

fees may not be assessed against non-members." *Id.* Thus, the focus of the 1986 opinion was on the concern against indirectly making union membership or participation mandatory by the compulsory payment of dues or similar fees, and did not necessarily limit itself to fees equal to full union dues. *Id.* The Arizona Attorney General's opinions are consistent with the language of the United States Supreme Court in *General Motors,* in which the Court found an "agency shop" arrangement involving the payment of full dues to be "the practical equivalent of union membership," 373 U.S. at 743, 83 S.Ct. 1453 (quotation omitted), and therefore lend support to our conclusion that mandatory "fair share" fees of any amount are impermissible.

¶ 25 Although Arizona authority is limited, we note that authority from other jurisdictions supports our decision that Arizona law not only prohibits compelled union membership, but compelled union participation or support in the form of "fair share" fees. *See City of Hayward v. United Pub. Employees, Local 390,* 54 Cal.App.3d 761, 126 Cal.Rptr. 710, 713–14 (1976) ("The forced payment of dues or their equivalent is, at the very least, 'participation' in an employee organization.") (citing other public sector cases); *see also Indep. Guard Ass'n, Local No. 1 v. Wackenhut Servs., Inc.,* 90 Nev. 198, 522 P.2d 1010, 1014 (1974) (holding that an agreement between a union and an employer requiring employees to pay money to the union in lieu of membership dues as a condition of employment was "violative of Nevada's Right to Work law"); *Ficek,* 219 N.W.2d at 865–73 (noting that numerous states had enacted some form of "right to work" legislation and citing similar decisions from some of those states).

¶ 26 More to the point, Florida's First District Court of Appeals has held unconstitutional a proposed pro rata "fair share" fee much like the mandatory contribution proposed by the Union in this case. *See Florida Educ. Ass'n/United v. Pub. Employees Relations Comm'n,* 346 So.2d 551, 552–53 (Fla. Dist.Ct.App.1977). In *Florida Education Ass'n,* the proposed "fair share" rule provided in pertinent part as follows: "In no instance shall the required contribution exceed

a pro rate [sic] share of the specific expenses incurred for services rendered by the representative in relationship to negotiations and administration of grievance procedures." *Id.* at 552. Thus, the proposed rule, like the "fair share" proposals made by the Union here, would have required as a condition of employment that non-union public employees pay the union a pro rata "fair share" of the union's bargaining or representation costs. *See id.* Further, Article I, Section 6, of the Florida Constitution, like Article 25 of the Arizona Constitution, prohibits compulsory union membership as a condition of employment.[22] *Florida Educ. Ass'n,* 346 So.2d at 552. The Florida court, noting that "[a]nything which imposes a charge upon the free exercise of a right abridges the use and enjoyment of the right," found the proposed "fair share" fee "repugnant" to the Florida Constitution "because it would require non-union employees to purchase a right which the Constitution gives them." *Id.* The court further characterized the difference between a rule requiring the payment of full union dues and a rule requiring the payment of only pro rata dues as being "of bookkeeping significance only and [ ] not a matter of real substance," *id.* at 553 (citing *Schermerhorn I,* 373 U.S. at 746, 83 S.Ct. 1461), and held as follows:

> There is no real difference between agency shop and fair share. The proposed rule is no less offensive to the Constitution because it requires non-union public employees to contribute only a pro rata share of bargaining costs rather than the equivalent of a month's union dues. Both are prohibited by the Constitution.

*Id.*

¶ 27 Similarly, in *International Union of the United Ass'n of Journeymen ("Plumbers Local 141") v. NLRB,* 675 F.2d 1257 (D.C.Cir.1982), the District of Columbia Circuit Court of Appeals upheld an NLRB order that a union's proposed "representation fees," which would have required non-union employees to contribute a pro rata share of the costs and expenses incurred by the union in enforcing and servicing the collective bargaining agreement, were prohibited by the "right to work" laws in Arkansas, Louisiana, Mississippi, and Florida.[23] *Plumbers Local 141,* 675 F.2d at 1258, 1262. The circuit court found the union's "representation fee" "less stringent" than a fee set to equal union dues, but found the rationale for prohibiting each fee to be the same. *Id.* at 1261–62. Accordingly, the court determined that the Florida Constitution (as well as constitutional and statutory authority in Arkansas, Louisiana, and Mississippi) prohibits the assessment of "representation fees" on non-union employees. *Id.* at 1262.

¶ 28 We agree with the reasoning in the *Florida Education Ass'n* and *Plumbers Local 141* decisions. As the decisions make clear, both an "agency shop" arrangement requiring non-union employees to pay the equivalent of full union dues and a "fair share" arrangement requiring the payment of a pro rata share of union bargaining or representation costs impinge on workers' right to work. Consequently, the fact that the Union's proposed "fair share" fee may be less than the amount of full Union dues is a distinction without a difference; it is the compulsion and not the amount that is important. Article 25 of the Arizona Constitution and Arizona's "right to work" statutes prohibit the Union's "fair share" proposal. As a result, the proposal is not a proper subject of collective bargaining between the City and the Union.

¶ 29 Because we affirm the superior court's determination that the Union's "fair share" proposals are illegal under the Arizona Constitution and Arizona's "right to work" laws, we need not, and do not, decide the other issues raised by the Union or by the City in its cross-appeal. *See, e.g., Southwest Soil*

---

**22.** "The right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union or labor organization." Fla. Const. art. 1, § 6.

**23.** Arkansas, Louisiana, and Mississippi all had constitutional or statutory provisions specifically prohibiting the payment of union dues, fees, or any other monetary consideration to a labor organization as a condition of employment. *See Plumbers Local 141,* 675 F.2d at 1259 (citing Ark.Code Ann. § 81–202[sic] (see current § 11–3–303); La.Rev.Stat. Ann. § 23:983; Miss. Const. art. VII, § 198–A; Miss.Code Ann. § 71–1–47). As we have acknowledged, however, Florida's constitution and statutes had no such explicit provisions.

*Remediation, Inc. v. City of Tucson,* 201 Ariz. 438, 446, ¶ 34, 36 P.3d 1208, 1216 (App. 2001).

## CONCLUSION

¶ 30 We affirm the superior court's judgment in favor of the City, holding that the Union's "fair share" proposals violate Arizona's "right to work" laws as embodied in Article 25 of the Arizona Constitution and A.R.S. § 23–1302. The Union has requested an award of its costs and attorneys' fees on appeal pursuant to A.R.S. § 12–2030 (2003) and Rule 4 of the Arizona Rules of Procedure for Special Actions. However, because the Union is not the prevailing party on appeal, we decline the Union's request.

CONCURRING: JEFFERSON L. LANKFORD and JON W. THOMPSON, Judges.