REQUESTED BY: Senator Mick Mines
Nebraska State Legislature
In our Op. Att'y Gen. No. 93009 (February 19, 1993), we considered the constitutionality of LB 255, a bill which would have required non-union employees in a bargaining unit covered by a collective bargaining agreement to pay fees to the labor organization representing those non-union employees in collective bargaining. The amounts to be paid by non-union employees under LB 255 represented the "fair share" for those employees of the costs of union representation, and the "fair share" amounts at issue represented the proportionate share of the costs borne by the labor organization in representing non-members. If any non-union employee refused to pay the labor organization the "fair share" amount, LB 255 allowed the union to file suit against that employee for payment of the "fair share," attorneys fees and court costs. We ultimately concluded in Opinion No. 93009 that the "fair share" provisions of LB 255 were "constitutionally suspect under Article XV, Section 13 of the Nebraska Constitution." Opinion No. 93009 at 4. That constitutional provision is Nebraska's Right to Work law.
A bill currently under consideration by the Legislature, LB 57, is similar in many respects to LB 255 which we discussed in Opinion No. 93009. Therefore, you have asked us whether the analysis set out in Opinion No. 93009 "is still valid today."
We have reviewed Opinion No. 93009 and the various authorities cited therein. Our supplemental research indicates that the analysis set out in Opinion No. 93009 remains valid, and indeed, there is more recent case authority which supports that analysis. For example, in American Federation of State, County and Municipal Employees, AFL-CIO v. City of Phoenix, 213 Ariz. 358, 142 P.3d 234 (Ariz.Ct.App. 2006), Review Denied January 9, 2007, the Arizona Court of Appeals considered whether a union's proposed mandatory "fair share" contribution by non-union employees violated an Arizona state constitutional provision similar to art. XV, § 13 of the Nebraska Constitution. The court ultimately concluded that the "fair share" provision violated the Arizona Constitution, and stated:
Further, we conclude that it is irrelevant whether the fee is for the full amount of union dues or a portion thereof; it is the imposition of a mandatory contribution, or "fair share" service fee, that is impermissible. In its September 2, 2004 minute entry, the superior court recognized that point, when it reasoned "that it is the compulsion and not the amount which is determinative." The clear intent of the electorate of Arizona in enacting Article 25 of the Arizona Constitution and Arizona's "right to work" laws was to ensure the freedom of workers to choose whether to join and participate in a union. Allowing the proposed "fair share" fee would be contrary to the intent voiced by Arizona citizens because it would essentially render meaningless the distinction between union membership and non-membership. Non-members would be forced to contribute to, and thus support, the Union, albeit in an amount slightly less than full union dues. Consequently, the proposed "fair share" fee would, in its practical effect to non-union employees, be little different than mandatory membership dues. Such a "fair share" fee is no less onerous to freedom of employment than a compulsory arrangement requiring the payment of full union dues. It is clear that the populace, through constitutional amendment and legislation, intended to forbid both management and labor from imposing, as a condition of employment, the requirement that any person participate in any form or design of union membership.
142 P.3d at 242, 243 (citations omitted) (emphasis in original). The purpose of Article 25 of the Arizona Constitution as described by the Arizona Court of Appeals appears quite similar to the purpose of art. XV, § 13 of the Nebraska Constitution, which we have described as "to prohibit compulsory unionism and to allow an individual employee to choose whether 'to join or affiliate' with a labor organization." 1979-80 Rep. Att'y Gen. 82, 83 (Opinion No. 55, dated March 13, 1979).
Therefore, we believe that the analysis set out in Opinion No. 93009 is still valid. To the extent that the provisions of LB 57 are the same as or similar to those of LB 255 from 1993, it appears to us that those provisions are constitutionally suspect for the reasons set out in Opinion No. 93009.
Sincerely,
 JON BRUNING Attorney General
 Dale A. Comer Assistant Attorney General
 Approved by: _______________________________ Attorney General